## WHEATLEY v. UNITED STATES.
### No. 5530.

Circuit Court of Appeals, Fourth Circuit.
Dec. 31, 1946.

## 600

Jacob S. Hyer, of Elkins, W. Va., for appellant.

Joe V. Gibson, U. S. Atty., of Kingwood, W. Va. (Wayne T. Brooks, Asst. U. S. Atty., of Clarksburg, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The defendant in this case was sentenced to prison for twenty-four years after a verdict of guilty upon an indictment which charged that he "unlawfully seized, kidnapped and held Denzil Wilson, for the purpose of forcing him, the said Denzil Wilson, to furnish transportation for him, the said Richard Lawrence Wheatley, from Newell, West Virginia, to East Liverpool, Ohio, and transported him, the said Denzil Wilson from Newell, West Virginia, in the Northern District of West Virginia, to East Liverpool, Ohio." The judge who presided at the trial was taken ill, and the sentence was pronounced by another judge after he had been informed that the accused had a bad criminal record and had previously served a number of prison sentences.

We are asked to set the judgment aside on the following grounds: (1) that the indictment was defective; (2) that the court erred in allowing the Government to produce in evidence a knife which was used by the defendant in the commission of the crime; and (3) that the charge of the

court was so unfavorable to the defendant as to unduly influence the jury against him.

■ It is contended that the indictment is defective because it does not clearly and unambiguously state the elements of the offense. The indictment is somewhat informal in character and does not carefully follow the words of the statute. It does. not charge, as it might well have done, that the defendant *knowingly* transported in interstate commerce Denzil Wilson who had been unlawfully seized, abducted and carried away. We do not commend the indictment as a form to be followed, but nevertheless we cannot say that it does not contain a statement of the essential facts constituting the offense charged, as. required by Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. It is true that the indictment does not charge that the defendant *knowingly* transported his victim, but the allegation that the defendant unlawfully seized and kidnapped Wilson and transported him from one state to the other necessarily implies that he had the knowledge which is an essential element of the offense, and this we think is sufficient. See Rumely v. United States, 2 Cir., 293 F. 532, 547, certiorari denied 263 U.S. 713, 44 S.Ct. 38, 68 L.Ed. 520; Howenstine v. United States, 9 Cir., 263 F. 1, 4; Holsman v. United States, 9 Cir., 248 F. 193, 195, certiorari denied sub nom Freeman v. United States, 249 U.S. 600, 39 S.Ct. 258, 63 L.Ed. 796.

■ It is also urged that the indictment is defective because it was not signed by the United States Attorney for the Northern District of West Virginia. It was in fact signed by one of the assistant United States attorneys for the District who signed the name of the United States Attorney without indicating that it was not signed by that official himself. Rule 7(c) of the Federal Rules of Criminal Procedure provides that an indictment shall be signed by the attorney for the Government. It has. been held that the signature of the prosecuting attorney is no part of the indictment and is necessary only as evidence of the authenticity of the document; and it.

has also been held that the improper signing of an indictment is not such a defect as would invalidate the instrument; In re Lane, 135 U.S. 443, 449, 10 S.Ct. 760, 34 L.Ed. 219; Miller v. United States, 6 Cir., 300 F. 529, 536, certiorari denied, 266 U.S. 624, 45 S.Ct. 123, 69 L.Ed. 474; King v. United States, 5 Cir., 279 F. 103, 104; United States v. McAvoy, C.C.N. Y., 26 Fed.Cas. (No. 15,654) 1044, 1045. These rulings are in harmony with the statutory provision contained in 18 U.S. C.A. § 556 which provides that no indictment in a federal case shall be deemed insufficient, nor shall the judgment be affected by reason of any defect or imperfection in matter of form only which shall not tend to the prejudice of the defendant. Moreover, Rule 52(a) of the Rules of Criminal Procedure provides that any error, defect or irregularity, which does not affect substantial rights, shall be disregarded. The indictment in this case was not invalidated by the manner in which the signature was appended.

There was evidence tending to show that the offense was committed in the following manner: On Sunday evening, May 26, 1946, at dusk the defendant, an elderly man, met Wilson in Newell at the place of a mutual acquaintance, and it was arranged that the defendant should ride with Wilson to the bridge across the Ohio River which connects Newell, West Virginia, with East Liverpool, Ohio. The defendant got in the front seat of the car with Wilson who drove towards the bridge. Before reaching it they arrived at a point near Wilson's home, and he slowed down and said he was not going any further. Thereupon the defendant pulled a knife from under his coat and stuck the point against the ribs of Wilson and ordered him to go across the bridge and then to a point near the defendant's home. The defendant, however, paid the toll on the bridge and when he got out of the car he threw a quarter on the seat to pay Wilson's toll on the return trip.

The testimony as to the defendant's sobriety at the time is in conflict. He testified that he had been in a gambling and drinking place since 11 a.m. and was drunk and had no recollection of what subsequently occurred. Wilson, the prosecuting witness, testified that he could not tell whether the defendant was drunk or sober. A witness for the Government testified that the defendant had been confined in the Weston State Hospital at Weston, West Virginia, as an alcoholic.

Wilson identified the knife which was used on this occasion. It was produced by a police officer of East Liverpool who searched the quarters in which the defendant lived and found the knife in the defendant's bed. At that time the police officer had a West Virginia warrant for the arrest of the defendant on a charge of assault, but he had no search warrant. There was no evidence to show that the search was made with the knowledge of or at the instigation of the Government officers or in cooperation with them.

Under these circumstances, there was no error in admitting the knife in evidence. The Fourth Amendment to the Federal Constitution prohibiting unreasonable searches and seizures is not a limitation upon the powers of the state, and evidence obtained by state officers entirely on their own account will not be excluded even though obtained during a search which, if conducted by federal officers, would have violated the constitutional provision. This rule, however, is not applicable to a search by state officers as the result of an understanding between them and federal officers that the federal offenses discovered by state officers will be prosecuted in the federal courts and where the federal officers adopt a prosecution originated by state officers as the result of a search made by them. In such a case the same rule as to the admissibility of the evidence obtained in the course of the search is applied as if the search were made by the federal officers themselves or under their direction. But there was no cooperation between the state and federal officers in this case, and the ordinary rule applicable to the use of evidence obtained by state officers in the course of an independent search by them is applicable. Kitt v. United States, 4 Cir., 132 F.2d 920; Sutherland v. United States, 4 Cir., 92 F.2d 305.

In his charge the judge first stated the general principles which govern criminal trials and told the jury that the defendant was presumed to be innocent until proved to be guilty beyond a reasonable doubt, and that they were the sole judges of the weight and credibility of the evidence. He then read the statute and the indictment and explained them to the jury, and finally discussed the evidence in the following words:

"Now, you have heard the testimony here of this defendant as to the situation in the place where he said he was gambling and drinking, and you heard the proprietor of the place say there was no gambling there, no drinks sold there at all. The old man said he was drunk, drinking wine, doesn't know what happened. Bear in mind that he did take money out of his pocket and pay the tollkeeper at the bridge the toll. He knew what it was and gave him the toll, and when he succeeded in having this Denzil Wilson take him where he wanted to go, he threw a quarter in on the cushion to pay the toll back into West Virginia. Was he so drunk he didn't know what he was doing? If he was, how did he know what the toll was going over there? If he was so drunk he didn't know what he was doing, how did he know to throw a quarter in there to pay the toll back?

"Now, gentlemen, I could go on—I am very much interested in this case—but I don't think it is necessary with gentlemen like you to consume more of your time and mine. If you believe this defendant, at the point of a knife sticking in the side of the driver of the car, forced him to take him across the river and to his home, the minute he crossed the river he was guilty of violating this Lindbergh statute [18 U.S.C.A. § 408a et seq.]."

▬ The appellant contends that this portion of the charge was prejudicial to him. Undoubtedly it was argumentative and clearly indicated that the judge gave no credence to the defendant's testimony that he was so drunk that he did not know what happened on the night of the occurrence. Moreover, the jury was not specifically instructed that they were not bound by this opinion of the court. We think that the criticism of the charge in this respect is well taken. In Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321, the Supreme Court restated the rule which preserves in the federal courts the right possessed by the judge at common law to comment upon the evidence, and at the same time emphasized the well known fact that the influence of the trial judge on the jury is necessarily of great weight and that his lightest word or intimation is received with deference and may prove controlling. The whole matter is succinctly summed up in the following statement of the rule by the court (289 U.S. p. 469, 53 S.Ct. 698): "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. Herron v. Southern Pacific Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857. In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination."

▪▬ This precaution was not taken by the judge in the pending case. The instruction at the beginning of the charge that the jury are the sole judges of the weight and credibility of the testimony may have been overlooked when the judge, at the end of his remarks, strongly indicated his disbelief of the defendant's testimony, and what he said must have made a deep impression on the minds of the jury. The understanding with which the defendant committed the act covered by the indictment was an important subject of the inquiry. The statute expressly restricts the federal offense to one who *knowingly* transports and abducts, or kidnaps, a person in interstate commerce; and the guilty knowledge applies not only to the forcible abduction but also to the interstate commerce feature of the offense. Drunken-

ness is no excuse for the commission of a crime but it may reduce the degree of the crime or negative a specific intent. 22 C.J.S., Criminal Law, § 68. The question in the pending case was not whether the defendant had committed an assault with a dangerous or deadly weapon punishable under the state law, but whether he had *knowingly* performed the acts which constituted the federal offense. We think that the charge did not sufficiently leave this question to the independent determination of the jury, and the judgment of the court must therefore be reversed.