UNITED STATES, Appellant and Cross-Appellee

v.

EUNICE E. FIELDS, Private–2, U. S. Army,
Appellee and Cross-Appellant
2 USCMA 278, 8 CMR 78

No. 1424

Decided March 5, 1953

Lt. Col. Thayer Chapman, U. S. Army, and Capt. Irvin M. Kent, U. S. Army, for Appellant and Cross-Appellee.

Lt. Col. Herman P. Goebel, Jr., U. S. Army, for Appellee and Cross-Appellant.

ROBERT E. QUINN, Chief Judge:

The accused was convicted by general court-martial of firing a rifle at his superior officer in violation of Article 90 of the Uniform Code of Military Justice, 50 USC § 684. He was sentenced to dishonorable discharge, total forfeiture of pay and confinement for ten years. The convening authority approved but the board of review reversed, based on our decision in United States v. Wilmer Keith (No. 503), 4 CMR 85, decided July 30, 1952. The Judge Advocate General of the Army has certified to this Court the correctness of the board's decision.

At the trial, following convening of the court and also after arraignment, defense counsel moved to ▇▇▇▇ suspend the proceedings on the ground that the accused lacked sufficient mental capacity to cooperate intelligently in his defense. The law officer, after receiving evidence on the motion, denied it subject to objection by any member of the court. An objection was offered, and the court was closed to deliberate and vote on the ruling. During the closed session, the law officer and reporter were called in and the following colloquy ensued:

"LO: Let the record show that the law officer and the reporter entered the closed session of the court in response to the request of the president of the court.

PRES: First, this request for suspension was on the basis that the accused could participate intelligently in the court at this time?

LO: Yes, sir, that was the motion.

PRES: You overruled the motion, subject to objection?

LO: Yes, sir, used the term, 'denied.'

PRES: The result is that we were to determine whether we would support your stand?

LO: Yes, sir, either sustain or overrule the law officer.

If the court desires further instructions, I feel that we should open the court and give them in the presence of counsel for both sides, if further instructions are desired.

PRES: I think that answers our questions, doesn't it?

(Members answered 'yes,' and nodded their heads affirmatively.)

PRES: Well, then, when do we make the announcement?

LO: The court should make its announcement after it has opened.

PRES: And in making the announcement, do I say that we sustain or overrule your objection?

LO: Yes, sir.

PRES: Thank you.

(The law officer and the reporter then left the courtroom, and the court reopened at 2106 hours, 11 June 1952.)"

This quotation from the record makes it clear that the court had already arrived at a decision when the law officer was called into closed session. Assuming, without deciding, that the rationale of United States v. Wilmer Keith, supra, applies to deliberations on rulings of the law officer on interlocutory questions, it is our opinion that the law officer here did not, in any manner, participate in or influence the deliberations of the court on the issue under consideration. United States v. Miskinis and Pontillo (Nos. 1535, 1536, 1579), 8 CMR 73, decided this date, is controlling here. This disposes of the issue certified.

Accused has also filed a petition for review which we granted limited to the issue of whether the instructions of the law officer ▇▇▇▇ on intoxication were correct. The law officer instructed the court as follows:

"LO: I will now instruct the court as to the elements of the offense as required by Article 51c of the Uniform Code of Military Justice. The court is advised that to find the accused guilty of the Specification of the Charge, it must be satisfied by legal and competent evidence beyond reasonable doubt, that, at the time and place alleged, the accused did fire a weapon, to wit: a Rifle, at Captain

**279**

Robert M. Moyer; that the said Captain M. Moyer was the superior officer of the accused at the time; and that the said Captain Moyer was in the execution of his office at the time. By 'superior officer' is meant not only the commanding officer of the accused, but any other commissioned officer of rank or command superior to that of the accused. An officer is in the execution of his office when engaged in any act or service required or authorized to be done by him by statutes, regulation, the order of a superior, or military usage.

"The court is further advised that included within the offense of firing a rifle at Captain Robert M. Moyer, his superior officer, who was then in the execution of his office, is assault with a dangerous weapon under Article 128, the elements of which lesser included offense of assault under Article 128, are that at the time and place and in the manner alleged, the accused attempted to do bodily harm to Captain Robert M. Moyer with a weapon, to wit: a rifle, and that such weapon was used in a manner likely to produce death or grievous bodily harm.

"With respect to the Specification alleged under the Charge, it is that the accused did not know his officer to be his superior officer is available as a defense.

"The court is further instructed that voluntary drunkenness, although it may have a bearing upon the specific intent involved in the commission of some crimes in the offense, some *offenses* in the offense here charged, the element of that specific intent is absent. Therefore, voluntary drunkenness and the conditions thereof have no bearing in the Specification of the charge."

It is clear that the law officer erred in informing the court that voluntary drunkenness had no bearing on the offense charged. Intoxication can render the accused legally unable to know that the person assaulted is his superior officer. United States v. Charles F. Simmons (No. 505), 5 CMR 119, decided September 26, 1952. This erroneous instruction was not cured by the statement of the law officer that lack of knowledge that the officer was his superior officer is available as a defense. At the least, these contradictory instructions could have resulted in confusion in the minds of the court.

The decision of the board of review is reversed and the case is remanded to The Judge Advocate General for rehearing or other action not inconsistent herewith.

Judge BROSMAN concurs. Judge LATIMER concurs in the result.