UNITED STATES of America

v.

Robert E. FUNKHOUSER.

Crim. No. 21794.

United States District Court
D. Maryland.

Oct. 18, 1961.

---

2. Howell v. Flemming, D.C.D.Or.1960, 188 F.Supp. 223; Carqueville v. Flemming, 7 Cir., 1959, 263 F.2d 875.

Joseph D. Tydings, U. S. Atty., and Robert E. Cahill, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Robert E. Funkhouser pro se.

THOMSEN, Chief Judge.

Defendant was found guilty of income tax evasion by a jury in this court and on the following day, June 6, 1952, was sentenced by Judge Chesnut to imprisonment for one year and a $25,000 fine. On the same day he signed a paper, witnessed by his attorney, G. C. A. Anderson, certifying that he did not wish to appeal the judgment, but elected to begin serving his sentence at once.

He filed no appeal, but on June 20, 1952, filed a motion to enlarge time for appeal, which was heard and denied by Judge Chesnut. Defendant served his sentence until paroled and paid his fine.

On March 28, 1958, he filed a motion under Rule 35, F.R.Crim.P., 18 U.S.C.A., to "correct the illegal sentence", raising a great many points, which were considered by Judge Chesnut and by the Fourth Circuit on appeal from Judge Chesnut's order denying the motion. See Funkhouser v. United States, 4 Cir., 1958, 260 F.2d 86, certiorari denied 358 U.S. 940, 79 S.Ct. 346, 3 L.Ed.2d 348.

In the fall of 1959 defendant filed three motions in this court: (1) "to correct illegal sentence", (2) "to review record and void illegal sentence", and (3) "to examine the record of the proceedings before the grand jury." Those motions were denied after hearing, and defendant appealed.

As an appendix to his brief on appeal defendant presented for the first time an unauthenticated photostatic copy of a previously undisclosed letter which he claims to have written to Judge Chesnut on June 6, 1952, and which he contends was a timely notice of appeal which the Judge should have filed in the Clerk's office among the papers in the case, but which defendant claims the Judge mailed back to defendant's wife. See Funkhouser v. United States, 4 Cir., 1960, 282 F.2d 341, 342.

In reply the government submitted, from Judge Chesnut's files, a letter bearing the same date, June 6, 1952, but with an entirely different text, and contended that defendant's exhibit was spurious. The Fourth Circuit felt that the issue was not one which should be decided upon documents not in the record and explanations unsupported by sworn testimony; accordingly that Court vacated the order and remanded the case to this Court "for the reception of evidence from both parties upon the above issue and others raised by the defendant". It directed: "The District Judge should then make specific findings of fact and conclusions of law upon all such issues."

In further motions, briefs, and oral argument at a hearing held before me on September 11–12, 1961, defendant has raised over sixty points. Some of them concern the validity of the judgment, the alleged letter of appeal and certain questions of procedural due process. Those issues will be dealt with below. Most of the points concern issues which were disposed of by the Fourth Circuit on the first appeal. 260 F.2d 86, 87. Defendant's principal complaint is still that the precise amount of his indebtedness had not been determined before the indictment was found. The

Fourth Circuit dealt with that contention on the first appeal, stating:

" * * * there is no requirement for the precise computation and assessment of the tax before there can be a criminal prosecution for fraudulent tax evasion under Sec. 145(b).

"The appellant also argues that the Commissioner had not, prior to the prosecution, passed upon each of 30,000 claimed deductions. At the trial the Government did prove that, by making various false claims for deductions, a substantial understatement of taxable income in the defendant's returns had occurred. This is sufficient basis for a criminal prosecution without first establishing the precise amount of the defendant's tax indebtedness. In later civil proceedings for the collection of the tax due by the appellant there was a determination and assessment as provided for in Sec. 272(a) of the Internal Revenue Code of 1939." 260 F.2d at page 87.

That ruling is binding on this court, and the remand does not require this court to redetermine that question of law. If the mandate should be construed to require that I pass on the question, I conclude that it was correctly decided by the Fourth Circuit.

A. On the issue of the purported appeal letter, the following facts are found.

While the jury was still deliberating, defendant told his counsel that if he were found guilty he "wanted to get it over with", and did not wish to appeal. Accordingly, with defendant's approval, his counsel asked that sentence be imposed promptly, and it was imposed the next day, June 6, 1952. On the same day defendant signed the election to waive appeal and begin sentence at once, referred to above.

After he was returned to the Baltimore City Jail, the same day, June 6, 1952, he wrote a letter to Judge Chesnut, which both parties concede to be genuine, thanking him for his consideration and fairness in the trial, but complaining that the Judge was "imposed upon and deceived this morning by [the assistant United States Attorney] when he told you that the government would make a civil claim against me for $288,000 for the years in question". The letter referred to various figures and contentions, but did not in any way indicate a desire or intention to appeal. That letter was found in Judge Chesnut's file by Mrs. Riede, who has been his secretary ever since he became a judge.

The disputed letter, which defendant claims he wrote to Judge Chesnut on the same day, June 6, 1952, also discusses figures and ends with the sentence: "Please examine that record and accept this as my notice of appeal, motion for a new trial, or appeal of this case no. 21794."

The admittedly genuine letter is written in ink, misspells the Judge's name, and contains figures different from those in the disputed letter, which is in pencil, correctly spells the Judge's name, and gives internal evidence of having been written after checking the record.

Judge Chesnut denied receiving the disputed letter. Mrs. Riede testified that she did not recall receiving or seeing any such letter, although she always opened the Judge's mail. She further testified that it was Judge Chesnut's regular practice to transmit any such letter to the Clerk, with a covering letter or memorandum, and to reply to the writer.

Judge Chesnut's fairness is proverbial; his scrupulousness in handling his correspondence with prisoners is an example to all judges. It is incredible that he would have failed to transmit such a letter to the Clerk.

The conclusion that the disputed letter was never sent to Judge Chesnut is supported by other evidence. A copy of the genuine letter was found in defendant's clothes by his wife, but the whereabouts of the disputed letter during the eight years before it was produced is not shown. More importantly, the disputed letter was not mentioned in (1) the motion to extend time for appeal, filed on

June 20, 1952, (2) a long letter defendant wrote Judge Chesnut on July 9, 1952, (3) a letter defendant wrote the Judge on December 3, 1952, in which he mentioned the genuine letter, (4) the motion which he filed in 1958, (5) the appeal from the ruling thereon, or (6) any of the motions which he filed in 1959.

I find that the disputed letter was never sent but was fabricated long after its purported date. I would cite defendant for perjury in connection therewith if I did not believe that his obsession with having his name cleared has affected his judgment. I conclude that he is entitled to no relief on this issue.

B. Several points urged by defendant attack the grand jury proceedings and the indictment. Defendant's unsupported statements that no government witnesses testified before the grand jury and that the records of the Court do not reveal that an indictment was presented to the Court are answered by the original minutes of the grand jury and of this Court, as well as by the docket. I read into the record from the grand jury minutes that two witnesses testified before it; the names of those witnesses will be certified by me under seal to the Court of Appeals, but defendant is not entitled to those names now.

The indictment was signed in the name of Bernard J. Flynn, United States Attorney, by Norman P. Ramsey, the Assistant United States Attorney who presented the matter to the grand jury, in accordance with the long-standing practice of the office of the United States Attorney in this District. Mr. Ramsey had authority from Mr. Flynn to sign Mr. Flynn's name to the indictment. Rule 7(c), F.R.Crim.P., directs that an indictment or information "shall be signed by the attorney for the government". Rule 54(c) states: " 'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney * * *." See also Rule 52(a), formerly 18 U.S.C.A. § 556. For the reasons stated by Judge Soper in Wheatley v. United States, 4 Cir., 159 F.2d 599, 600, 601, the indictment in this case was not invalidated by the manner in which the signature was appended. See also Wiltsey v. United States, 4 Cir., 222 F.2d 600; United States v. Vance, 6 Cir., 256 F.2d 83.

C. For the present hearing, defendant requested a subpoena duces tecum directed to Andrew F. Oehmann, Executive Secretary to the Attorney General, to testify and produce "all papers and records connected with your examination and rejection and return to the Bureau of Internal Revenue of the complaint of income tax evasion against the defendant in this case." The government made an oral motion to quash that subpoena.

The reason defendant wishes these papers is not entirely clear; he apparently wishes to show that the representatives of the Department of Justice were convinced by his attorneys and accountants that there was no case against him, and returned the papers to the Bureau of Internal Revenue to make precise computations of tax indebtedness. As noted above, the Fourth Circuit has held that such computations were not required before a criminal prosecution under sec. 145(b) of the 1939 Code. 260 F.2d at page 86. Although such evidence, if it existed, would not be relevant or material to any issue which can be raised at this time, I stated at the hearing that I would require the Department of Justice to submit to the court for examination any memoranda in the files of the Department dealing with the conference in question, with the right in the government to submit any subsequent papers authorizing the seeking of an indictment. I said that I would examine the papers and determine whether they should be made a part of the record in this case; that if made a part of the record defendant would be given an opportunity to examine and argue from them; that if not made a part of the record, they would be sealed and sent to the Fourth Circuit in the event of an appeal. Defendant

stated in open court: "I think that is very fair, Your Honor."

The government has supplied and I have examined those papers. They contain no evidence which supports any issue defendant has raised, whether or not such issue can properly be raised at this time. Accordingly, the papers have been sealed.

■ D. Defendant argues that his chosen attorney was prevented from representing him by Mr. Zimmermann, the former Clerk of this court, for the purpose of requiring him to employ the firm of which Mr. Anderson is the senior partner. Trained by Judge Rose and Judge Soper, Mr. Zimmermann was the mentor of a generation of this bar (including the author of this opinion) and was incapable of such an impropriety. The evidence furnishes no support for defendant's contention. It shows that T. Howard Duckett wrote a letter to the Clerk entering his appearance for defendant on January 26, 1950. Mr. Zimmermann called Mr. Duckett's attention to Rule 55 of the Local Rules [1] on January 27, 1950. Mr. Duckett immediately wrote Mr. Zimmermann that his residence in Hyattsville, Maryland, and his office in Silver Spring, Maryland, complied with the Rule, and Mr. Zimmermann wrote Mr. Duckett on February 1, 1950, that his appearance had been entered for defendant. It was so entered and was never stricken. Mr. Duckett decided that the responsibility of the trial should be carried by a Baltimore lawyer and referred the case to John S. Stanley, of the Baltimore Bar, a lifelong friend. Mr. Stanley concluded that the case required the services of an attorney skilled and experienced in defending such charges, and recommended Mr. Anderson, who satisfied those specifications. Pursuant to Mr. Stanley's suggestion, Mr. Duckett took defendant to Mr. Anderson's office, first speaking to Mr. Anderson's partner, Wilson K. Barnes, whom Mr. Duckett knew. Defendant was represented at the trial by Mr. Anderson and the late James S. Morrow, a young man of great industry and ability, and defendant made no point of the absence of Mr. Duckett before or during the trial.

Defendant's further contention that Mr. Anderson's representation of him was so incompetent as to amount to a denial of due process is frivolous. The few items referred to by defendant to show the alleged incompetence in fact prove the opposite and testify to Mr. Anderson's skill and experience.

### Order

All pending motions filed by defendant are hereby denied.

---

1. Rule 55 provided that "Except where a party conducts his own case, no bill, declaration or other pleading at Law or in Equity, and no notice required to be signed by counsel shall be accepted by the clerk, unless it is signed by an attorney or solicitor who shall have been admitted to practice in this court, who shall be a resident of and shall maintain an office in this district, and who shall have entered his appearance of record in the case with the address in the district where notice can be served. * * *" That Rule has not been enforced in recent years in criminal cases and has been amended.