UNITED STATES, Appellee

v

DONALD R. OISTEN, Private, U. S. Army, Appellant

13 USCMA 656, 33 CMR 188

No. 16,437

April 19, 1963

*Captain Bruce C. Johnson* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod, Captain Charles W. Schiesser,* and *Captain Thomas Stapleton.*

*Captain Otis D. Chapoton* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Tried by general court-martial for striking a superior officer and willful disobedience of the same officer, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890, specifications 1 and 2 respectively of Charge I, and for threatening the same officer, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, Charge II, the accused was found guilty of the assault and threat offenses and of the lesser included offense of failure to obey a lawful order, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. He was sentenced to dishonorable discharge and confinement at hard labor for two years. The convening authority approved the findings and sentence, and a board of review, while affirming the findings, approved only so much of the sentence as provided for a bad-conduct discharge and confinement at hard labor for one year and six months.

There was no contest over the facts surrounding the incidents for which the accused was charged, the defense's principal theory being mental incapacity due to voluntary intoxication.

On the evening of the alleged offenses, the accused and Specialist Four Farrell drank beer for three or four hours at Kilroy's bar. Upon returning to the barracks, Oisten telephonically received distressing news from his pregnant wife. He became upset and "his eyes were red, [he] looked like he was crying over the phone." When he arrived at battalion headquarters "he seemed under an emotional strain." Lieutenant Minor, the officer of the day and victim of the alleged offenses, testified that the appellant was "obviously in a very excited and highly emotional state." He spoke "in a very loud voice," contrary to his usual manner of speaking, about his wife's troubles and how he needed to be with her. "I smelled alcohol on his breath." Although Lieutenant Minor

repeatedly ordered the appellant to be quiet, the latter continued to relate his troubles in a very loud voice and became increasingly angry. Even after Oisten had pushed the lieutenant with the palms of his hands and shouted the alleged threat, Minor attempted to quiet the accused "in a tone of voice loud enough to override the loudness of his own voice" but was unsuccessful. "Not until after the sergeant of the guard and the two guards appeared on the scene and I directed them to place him under arrest" did he quiet down.

The appellant testified that when he awoke the following morning in the stockade, he "faintly [recalled] something about Lieutenant Minor walking toward me in a room. . . . That is all I could remember." He further testified that he had no memory whatever of any encounter with Lieutenant Minor on the previous evening.

Captain Spencer, a qualified psychiatrist, testified that when one is under the influence of alcohol, an emotional involvement adds to one's already impaired ability to exercise self-control. In answer to a question of a member of the court, whether it was *possible* or *probable* that the accused could remember nothing after the telephone conversation with his wife, inasmuch as he had consumed no more alcohol, the Captain testified that:

"It would be *probable* if we would consider the time element, the absorption factor of the alcohol. He may have been more intoxicated after talking to his wife due to the fact more was in the blood stream. It is also true that people in this state of intoxication have selective recall, that they remember [matters] usually more important to them and forget minor details." [Emphasis supplied.]

At the conclusion of the evidence, the law officer instructed the court on the elements of the three offenses charged. In addition, he instructed the court on the elements of the offense of failure to obey a lawful order as being a lesser included offense to the willful disobedience involved in specification 2, Charge I. Thereafter, on the basis of the evidence of intoxication, the law officer

instructed that intoxication may be considered in determining the question of specific intent to defy authority as previously delineated in the instruction as to specification 2, Charge I. This instruction was not extended to the element of accused's knowledge of Lieutenant Minor's status as a superior officer.

As noted above, the court found accused not guilty of willful failure to obey but guilty of the lesser included offense.

We granted accused's petition for review on the single issue of:

Whether the law officer was required to instruct on intoxication as affecting knowledge in regard to the specifications of Charge I.

Since it is not possible to say with precision what part the consumption of alcoholic beverages plays in the commission of a specific criminal act, intoxication as a defense has long plagued the administration of justice. Bishop says that:

"The common law has always looked upon drunkenness as, at least, *quasi* criminal, — a step toward the wrong, if not the wrong itself. So that since a man who does an indictable act is punishable if impelled by an evil purpose, even of a sort not indictable, voluntary drunkenness in the ordinary case supplies the criminal intent." [1 Bishop, A Treatise on Criminal Law, 9th ed, § 399(2).]

In a commentary on Rex v Beard, 1920 AC 479, entitled "Voluntary intoxication as affecting criminal intent," 6 Cornell Law Quarterly 193 (1921), the following is noted:

"At the early common law voluntary drunkenness was never allowed to palliate a criminal act. [Reniger v Fogossa, 1 Plow (Eng) I, 19 (1816.)] Coke says that it rather aggravates the crime [Coke Upon Littleton, page 247 (1631)], and Blackstone uses language to the same effect in his Commentaries [4 Blackstone's Commentaries 25 (1765)]. Hale remarks that a drunken man shall have the same judgment as if he were in his right senses [1 Hale's

Pleas of the Crown 32 (1660).] In *Rex v Grindley* [I Russel on Crimes, 7th ed, page 80 note] in 1819, voluntary intoxication was first allowed to be set up as a defense. The succeeding cases down to *Rex v Meade* [I KB 895] in 1909 firmly established that wherever a specific intent must be proved to constitute a particular offense evidence of drunkenness was admissible to rebut it. [Marshall's Case, 1 Lewin (Eng) 76 (1830); Pearson's Case, 2 Lewin (Eng) 144 (1835); Reg v Cruse, 8 C & P (Eng) 541 (1838); Rex v Meakin, 7 C & P (Eng) 297 (1836); Rex v Monkhouse, 4 Cox C C (Eng) 55 (1849); Reg v Moore, 3 C & K (Eng) 319 (1852); Reg v Stopford, II Cox C C (Eng) 643 (1870); Reg v Doherty, 16 Cox C C (Eng) 306 (1887)]."

In the United States, this refinement in the law is now generally accepted. The authorities dealing ▇ with this subject are fully presented and discussed in an editorial note to Harris v United States, 36 LRA 465. See also cases in this Court cited below and the Manual for Courts-Martial, United States, 1951, paragraph 154; 1 Wharton, Criminal Law and Procedure, § 44, at page 102, et seq; Miller, Criminal Law, § 42(c) (1934); Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 6.09, at page 388; 22 CJS, Criminal Law, § 68; 15 Am Jur, Criminal Law, § 340.

However, this approach was apparently not always greeted with enthusiasm. As late as Harris v United States, 8 App DC 20, 36 LRA 465 (1896), the Court of Appeals for the District of Columbia said:

". . . we must hold it emphatically as the law of the District of Columbia, that voluntary intoxication is neither an excuse nor a *palliation* for crime. Voluntary intoxication is itself a crime, at least in morals, if not always in law. It is always at least a vice. And it would be subversive of all law and of all morality if the commission of one vice or crime could be permitted to operate as an excuse or *palliation* for another crime.

• • • • •

". . . When the result of any specific course of conduct, such as indulgence in intoxicating liquors to excess, is notoriously such as easily and naturally to lead to the commission of crime, society can only be safe in rigidly holding the author of such conduct to accountability for its usual consequences. These are elementary principles of law; but they seem to be ignored in those judicial decisions and by those text writers who would reduce the grade of crime or relieve entirely from responsibility for it those who have committed it while in a state of voluntary intoxication." [Emphasis supplied.]

In support of its position, the court in *Harris* cited the following cases, all of which adhered to a similar line of reasoning: United States v Cornell, 25 Fed Case No. 14,868 (CC Rhode Island) (1820); Commonwealth v Hawkins, 69 Mass 463 (1855); The People v Rogers, 18 NY 9, 72 Am Dec 484 (1858); and Flanagan v The People, 86 NY 554, 40 Am Rep 556.

That this is not the rule today, even in the District of Columbia, was made manifest by the same court in Proctor v United States, 177 F2d 656 (CA DC Cir) (1949):

"No rule is more firmly established than that voluntary drunkenness is no defense for a criminal act, unless specific intent or knowledge is an element of the offense, when drunkenness may be shown to prove mental incapacity to form the specific intent."

In the same year the District Court for the Eastern District of Pennsylvania, in United States v MacLeod, 83 F Supp 372 (1949), observed that:

"Intoxication may be a valid defense to the successful prosecution for crime if the defendant is incapable of forming the requisite intent. Wheatley v United States, 4 Cir, 159 F 2d 599."

The Circuit Court of Appeals in *Wheatley* (1946), supra, gave added dimension to the general rule that where a crime involving a specific intent has been committed, voluntary drunkenness

**659**

may reduce the crime or negative the specific intent. This is apparent in its language indicating the consideration that should be given to the defense of voluntary intoxication as affecting one's ability to "knowingly" perform the act charged. (In this respect it is in accord with Proctor v United States, supra.) Wheatley was charged with kidnapping a motorist for the purpose of forcing him to furnish interstate transportation. The testimony as to his sobriety was in conflict. He testified that he had been in a gambling place since 11:00 a.m. on the day in question and was drunk and had no recollection of what subsequently occurred. Wilson, the prosecuting witness, testified that he could not tell whether the defendant was drunk or sober. The trial judge, in *Wheatley,* charged the jury as follows:

" 'Now, you have heard the testimony here of this defendant as to the situation in the place where he said he was gambling and drinking, and you heard the proprietor of the place say there was no gambling there, no drinks sold there at all. The old man [Wheatley] said he was drunk, drinking wine, doesn't know what happened. Bear in mind that he did take money out of his pocket and pay the tollkeeper at the bridge the toll. He knew what it was and gave him the toll, and when he succeeded in having this Denzil Wilson take him where he wanted to go, he threw a quarter in on the cushion to pay the toll back into West Virginia. Was he so drunk he didn't know what he was doing? If he was, how did he know what the toll was going over there? If he was so drunk he didn't know what he was doing, how did he know to throw a quarter in there to pay the toll back?' " [159 F 2d 599, 602.]

In its opinion on appeal, the court stated that:

". . . The understanding with which the defendant committed the act covered by the indictment was an important subject of the inquiry. The statute expressly restricts the federal offense to one who *knowingly* trans-

**660**

ports and abducts, or kidnaps, a person in interstate commerce; and the guilty knowledge applies not only to the forcible abduction but also to the interstate commerce feature of the offense. Drunkenness is no excuse for the commission of a crime but it may reduce the degree of the crime or negative a specific intent. 22 CJS, Criminal Law, § 68. The question in the pending case was not whether the defendant had committed an assault with a dangerous or deadly weapon punishable under the state law, but whether he had *knowingly* performed the acts which constituted the federal offense. We think that the charge did not sufficiently leave this question to the independent determination of the jury, and the judgment of the court must therefore be reversed." [159 F 2d 599, 602.]

In the same vein is this statement in Wharton, supra:

"If the definition of a crime makes knowledge an essential element, the defendant's state of intoxication may prove that he did not have the capacity to act knowingly." [1 Wharton, Criminal Law and Procedure, supra, at page 103.]

See also People v Harris, 29 Cal 678 (1866); Pigman v State, 14 Ohio 555, 45 Am Dec 558 (1846).

With reference to the general rule, the decisions of this Court are in complete accord. United States v Roman, 1 USCMA 244, 2 CMR 150; United States v Drew, 1 USCMA 471, 4 CMR 63; United States v Lookinghorse, 1 USCMA 660, 5 CMR 88; United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Wray, 2 USCMA 26, 6 CMR 26; United States v Miller, 2 USCMA 194, 7 CMR 70; United States v Fields, 2 USCMA 278, 8 CMR 78; United States v Burden, 2 USCMA 547, 10 CMR 45; United States v Craig, 2 USCMA 650, 10 CMR 148. Indeed, in the case at bar, with reference to the specific intent involved in the offense of willful disobedience of a lawful command of a superior officer, specification 2, Charge I, the law officer so instructed. However, he specifically limited his instructions to this single element and in nowise indicated to the members of the

court whether or not they could also consider evidence of intoxication in connection with accused's ability to "know" that the person he assaulted and failed to obey was a superior officer. It is this which appellant claims was prejudicial error.

In order that there be no confusion as to the content or extent of the law officer's instructions in this regard, that portion thereof is set forth verbatim hereinafter:

"With reference to the evidence tending to show that the accused was intoxicated at the time of the alleged offense of willful disobedience of a lawful command of a superior officer, you are advised that you may consider evidence of voluntary drunkenness in determining whether the accused had sufficient mental capacity to entertain the specific intent involved in the offense of willful disobedience of a lawful command from a superior officer. The specific intent involved in the offense of willful disobedience is a specific intent to defy authority. The fact that a person was intoxicated at the time he committed an offense does not necessarily show that he was deprived of his reasoning ability for a person may be drunk and at the same time be aware of his acts and their nature and probable consequences. The question raised by the evidence of voluntary drunkenness and presented for your determination is whether the accused was intoxicated to such a degree as to render him mentally incapable of entertaining a specific intent to defy authority. Unless you are satisfied beyond a reasonable doubt that the accused did have the mental capacity at the time of the alleged offense to entertain a specific intent to defy authority, then you should find him not guilty of the offense of willful disobedience.

"If you find the accused not guilty of willful disobedience, but you are satisfied by legal and competent evidence beyond a reasonable doubt that the accused is guilty of a lesser included offense, it will be necessary for you to modify the specification to reflect a finding as to which you have no reasonable doubt. I have advised you that the accused's knowledge that the alleged command was from his superior officer is an essential element of the offense of willful disobedience of a superior officer. You are instructed that you cannot convict the accused of the offense of willful disobedience of a superior officer if in fact he did not know of the command or know that the command was issued by his superior officer; however, such knowledge on the part of the accused, like any other fact, may be proved by circumstantial evidence, that is, by evidence of facts or circumstances from which the only reasonable and justifiable inference is that the accused had such knowledge. With respect to the lesser included offense of failure to obey, you are advised that the element of the accused's knowledge of the order may likewise be proved by circumstantial evidence.

. . . . .

"The accused has testified that he has no recollection of having committed the offenses alleged and attributes this inability to recall to intoxication aggravated by emotional upset resulting from information received from his wife concerning domestic difficulties. You are advised that the inability to recall resulting from imbibing of intoxicants is not a legal defense to the offenses charged unless it so affected the mind of the accused asserting the defense such that he could not distinguish right from wrong and[1] could not adhere to the right. Nevertheless you are advised that intoxication is a factor which you may consider in determining the question of specific intent to defy authority as I have previously instructed you, as to Specification 2 of Charge I."

Inasmuch as the members of the court found the accused not guilty of the offense of willful disobedience but guilty of the lesser included offense of failure

---

[1] The word "and" was changed to "or" by the law officer at the conclusion of his instructions.

to obey a lawful order, it is reasonable to assume that they may have done so in accordance with the above-noted instructions, thereby finding, as a matter of fact, that the accused was sufficiently intoxicated at the time of the offense as to "render him mentally incapable of entertaining a specific intent to defy authority."

In this posture, we are faced with determining (1) whether, as a matter of law, it was necessary that the accused "know" the status of Lieutenant Minor as a superior officer in order to be found guilty, and (2), if so, whether his ability to "know" this fact *could* be impaired by the same state of intoxication as was found to negate the specific intent.

In his instructions on the elements, the law officer included such knowledge as essential in each of the specifications in Charge I. He told the court that in order to find the accused guilty of the assault offense, it must find that the accused "knew that the said First Lieutenant Joseph E. Minor was his superior officer" and, as to the offense of willful disobedience, that the accused "knew that the command was from his superior officer." The Code does not expressly require the element of scienter. Article 90, Uniform Code of Military Justice, 10 USC § 890, states that:

"Any person subject to this chapter who—

(1) strikes his superior commissioned officer or draws or lifts up any weapon or offers any violence against him while he is in the execution of his office; or

(2) willfully disobeys a lawful command of his superior commissioned officer;

shall be punished. . . ."

However, as early as United States v Simmons, supra, pages 694 and 695, we thoroughly explored this area, as it pertained to part (2) of Article 90, and expressed our belief that knowledge is an essential element of that offense which must be proven by the Government. At that time we suggested to the services that the Manual be changed to show that in this type of offense knowledge is an element which must be included in the proof. In reason, this same element applies to part (1) of article 90, and we have so held. See United States v Fields, supra, and United States v St. Pierre, 3 USCMA 33, 11 CMR 33. For, as Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 570, says, "To warrant a conviction [for striking a superior officer], it should appear that the accused was *aware* that the person assailed by him was his superior officer."

In accord are the Federal cases interpreting Section 111, Title 18, United States Code, "Assaulting, resisting, or impeding certain [Federal] officers or employees." There, too, although the statute does not specifically indicate that knowledge of the status of the officer is an essential element of the offense, the courts have uniformly so held. See Annotations to that section in 18 USCA. See also, 6 Am Jur 2d, Assault and Battery, § 12, and cases cited under footnote 1.

Since knowledge is an essential element in both specifications under Charge I, it is clear beyond cavil that evidence of intoxication could have an important bearing on an accused's ability to entertain such knowledge. Intoxication can render an accused legally unable to know that the person assaulted or disobeyed is his superior officer. United States v Simmons, United States v Miller, United States v Fields, all supra; paragraphs 169a and b, Manual for Courts-Martial, United States, 1951.

Where an affirmative defense is reasonably raised by the evidence, the law officer is required, *sua sponte,* to instruct thereon. United States v Miller, supra; United States v Ginn, 1 USCMA 453, 4 CMR 45; United States v Heims, 3 USCMA 418; 12 CMR 174; United States v Amie, 7 USCMA 514, 22 CMR 304. In this case, the law officer should have instructed on intoxication as affecting knowledge and his omission to do so was prejudicial error. United States v Amie, supra.

The decision of the board of review, as to the violations of Articles 90 and 92, is reversed and the case is returned to The Judge Advocate General of the Army for further action. A board of review may reassess a sentence appro- priate for the threat offense or a rehearing may be ordered.

Chief Judge QUINN and Judge FERGUSON concur.