Leonard T. MAXEY, Appellant,

v.

Henry David CHAPMAN, and Super Service Motor Freight Company, Inc.,
Appellees.

No. 6992.

United States Court of Appeals
Fourth Circuit.
Argued June 13, 1955.
Decided July 16, 1955.

T. Warren Messick, Roanoke, Va.
(Morton Honeyman, Roanoke, Va., on
brief), for appellant.

Fred B. Gentry, Roanoke, Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought by Leonard T. Maxey to recover damages on account of substantial injuries, expenses and loss of wages suffered as the result of an automobile collision which occurred at 11 A.M. on May 7, 1953 on a public highway 11 miles east of Christiansburg, Virginia The road at this place is a four lane dual highway running east and west; each lane is 12 feet in width, and the east and westbound sections of the road are separated by a grass covered area 30 feet in width. Bordering the south side of the road is a gasoline station which has two entrances, 150 feet apart. The eastern entrance lies opposite a 30 foot opening in the grass strip through which westbound traffic may cross the road and enter the station. Going east there is a slight downgrade and there is a clear view to the west from the western entrance of the station for one thousand feet.

Maxey was driving a one-ton panel truck in the westbound lane in the delivery of packages on a route between Roanoke and Christiansburg. When he reached the gas station he used the crossover and drove his car southerly through the eastern entrance of the station and made certain deliveries. He then returned to the highway through the western entrance of the station curving into the left-hand eastbound lane with the intention of using the crossover to return to the westbound lane and continue deliveries on his route. After proceeding a short distance, and before reaching the crossover, his truck was struck in the rear by a tractor-trailer weighing 44,000 pounds which was being driven eastwardly by Henry D. Chapman at the rate of 45 miles per hour. Questions of negligence, contributory negligence and last clear chance in connection with the collision were submitted to the jury in a charge to which the appellant took no exception, and the jury found for the defendant.

In the charge the judge outlined the opposing theories of the parties as to how the accident happened, substantially as follows: the plaintiff's testimony was that as he was leaving the station he stopped at the western exit and looking to the west saw the tractor-trailer 1,000 feet away, traveling in the southerly right-hand lane; that he then crossed the highway into the left-hand lane and had gotten out of the way of the truck and had driven one-half of the distance to the crossover when the tractor-trailer hit him in the rear; and he said that the driver of the latter vehicle admitted that he had dozed off and was inattentive at the time of the accident. The version of Chapman, the driver of the tractor-trailer, was that when he reached a point about 130 feet west of the entrance the panel truck came out of the station without stopping, turned right and proceeded in the southerly lane of the highway; that he applied his brakes because he was running at a greater rate of speed and turned to the left into the north lane in order to pass, and as he did so the panel truck also turned to the left without warning so that the collision was inevitable. He denied making the admissions attributed to him.

The charge of the judge fully and fairly covered the issues arising from the testimony and included specific instructions as to the duty of the driver coming out of the private way on to the public road to stop first and ascertain whether it was safe to proceed, and also as to the duty of the driver on the public road approaching the private driveway to do everything possible to prevent the collision if he saw, or should have seen, that the plaintiff was in danger.

In this court it is not denied that there was substantial evidence to support the verdict for the defendant. The appeal is based principally upon the contention that without justification the judge interrupted the attorney for the plaintiff in the course of his opening argument at the end of the testimony and compelled him to desist from pursuing a point that

he was making and thereby prejudiced the plaintiff in the eyes of the jury. It was of great importance for the plaintiff to show, and he did show, that the testimony given by the driver of the tractor-trailer in a pretrial deposition differed in material respects from his testimony before the jury. In the deposition the driver said that he first saw Maxey when he was 200 feet away but at the trial he said that this distance was from 400 to 450 feet. At the trial the driver said that Maxey was 130 feet away when he pulled out of the service station area and entered the highway, but in the deposition the driver gave this distance as 30 feet. He, however, explained that he had not measured the distances before the deposition was taken but had merely stepped them off and the measurements were taken at a later date. He explained again and again during his cross examination at the trial that when he stated in the deposition that the space between the vehicles was 30 feet when Maxey drove out of the service station and turned into the road, he meant 30 feet from the western end of the exit which was 100 feet wide. A statement to this effect also appeared in the deposition. The cross examination on this point at the trial was so long and so repetitious that the judge finally put an end to it. The plaintiff also complains of this ruling, but the matter was clearly one within the discretion of the court and since the point had been fully developed in cross examination, no harm was done to the plaintiff's case.

The cross examination of the defendant driver was concluded shortly before the completion of the defendant's case and the argument before the jury took place on the following day. During the argument plaintiff's attorney told the jury that the driver had sworn *absolutely* in the deposition that the first time he saw the Maxey car he was 200 feet away and that when the Maxey car came out of the station area, he was 30 feet away. At this point the judge interrupted, saying that the argument was a misconstruction of the evidence so far as the 30 feet distance was concerned, as had been shown by the cross examination of the witness the day before. The judge refused to permit the attorney to repeat the statement. Nevertheless the attorney continued without interruption to stress the point that the driver had given 200 feet in the deposition and 450 feet at the trial as the distance between the vehicles when he first saw the plaintiff.

This interference on the part of the judge is the main basis for the plaintiff's contention that he was prejudiced in the jury's eyes by the attitude of the judge. In our opinion the incident does not furnish substantial basis for the contention. It falls far short of the sort of judicial conduct that was condemned in Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321, and other cases which the appellant cites. The comment of the judge was not without justification, since the defendant driver had repeatedly explained the distance of 30 feet in his cross examination at the trial and had also stated in his deposition that he was 30 feet from the western exit when he applied his brakes. Our examination of the transcript of the evidence convinces us that the judge played no favorites in the pending case. He rebuked both counsel severely when they engaged in what appeared to him as unseemly wrangling during the examination of the witnesses; and in the opening paragraph of his charge he told the jury that the argument on both sides had thrown little weight on the issues since both lawyers had spent a large part of their time in recriminations against each other and against the witnesses instead of pointing out to the jury what had actually happened as shown by the facts of the case. Furthermore, both at the outset and again in the body of the charge the judge admonished the jury that theirs was the responsibility to decide all issues of fact and that his statements or comments upon the evidence or upon the credibility of the witnesses were advisory only and the jury was at liberty to ignore them altogether.

The plaintiff further complains of the action of the judge in interrupting the cross examination of a surveyor-engineer who was offered as a witness by the defendant and produced a map of the site of the accident. The plaintiff complains also of the interruption by the judge of the cross examination of the driver of the truck as above referred to. In both instances the cross examination had gone on at great length and the layout of the area of the accident had been clearly shown both by the map and by photographs of the site offered by both parties. These documents were material since they furnished a basis for the plaintiff's argument that even if he was negligent in coming out of the station into the path of the trailer-truck, the latter had a clear chance to avoid the accident; but the record plainly shows that the plaintiff's attorney was afforded ample opportunity to develop the evidence in this respect from every angle and to the fullest extent. The matter was well within the discretion of the trial judge and his direction that the cross examination be discontinued was completely justified.

Nor was the judge in error in refusing during the cross examination of the surveyor-engineer to suspend the examination of the witness in order that the defendants' attorney might read from decisions of the courts as to the doctrine of the last clear chance. As we have seen, the judge was in no doubt upon the point and needed no further discussion. The law of the case was clearly explained to the jury both as to the duty of the plaintiff to look out for approaching traffic before entering the highway and also as to the duty of the defendant to avail himself, if possible, of the last clear chance to avoid the accident; and the defendant's attorney gave his approval to the charge of the court in these respects.

Finally the plaintiff complains of an incident which occurred upon the conclusion of the defendant's testimony. At this point the plaintiff's attorney, in answer to an inquiry from the judge, stated that he had a rebuttal witness who was not then present in the courtroom but was on his way and would take at least eight to ten minutes to arrive. The witness was a lawyer who had been associated with the plaintiff's attorney at the time of the accident but was not associated with him at the trial of the case. It was stated to the court that he would testify that he visited the scene of the accident on the day of its occurrence and later in the afternoon went to the hospital, to which the plaintiff had been taken, and found that the plaintiff was not in proper condition to talk about the case.

The purpose of the proposed testimony was to offset the evidence of an insurance adjuster who had visited the hospital and interviewed the plaintiff a short time before the attorney arrived at the hospital. The adjuster had testified on behalf of the defendant as to statements made by the plaintiff with regard to the approach of the tractor-trailer and the care which the plaintiff took in leaving the service station immediately before the collision. These statements conflicted to some extent with the plaintiff's testimony. The plaintiff testified on cross examination that he did not remember the visit of the adjuster to the hospital and did not remember making the statements to which the adjuster testified. It was admitted, however, that the adjuster had visited the plaintiff at the hospital and that he had written an account purporting to show what the plaintiff had said to him, and had given copies of the statement to the attorneys on both sides of the case. The adjuster testified that before he questioned the plaintiff he had been told by the doctor in charge of the plaintiff at the hospital that the plaintiff was suffering from his injuries but was able to talk to him about the accident. The doctor himself, who was a witness for the plaintiff in the case, testified that the plaintiff was not suffering from concussion or shock and did not lose consciousness, although he was in much pain and had to be given morphine. The doctor also

testified that on the day of the accident the plaintiff had made a statement to him as to the circumstances of the accident. The adjuster himself testified that the plaintiff was in considerable pain when he made the statement.

Giving consideration to all of these circumstances, we do not think it was an abuse of discretion on the part of the District Judge to refuse to suspend the proceedings in order to give a non-medical witness, who had been the plaintiff's lawyer, an opportunity to give a layman's opinion as to the condition of the plaintiff, especially as the doctor had permitted the adjuster to interview the patient.

Affirmed.