**UNITED STATES of America, Appellee,**

v.

**Gonzalo Salvador Martin TELLO, Appellant.**

**No. 82–5070.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 12, 1982.

Decided May 4, 1983.

Rehearing and Rehearing En Banc Denied July 27, 1983.

Jonathan Shapiro, P.C., Alexandria, Va. (John McN. Broaddus, Alexandria, Va., on brief), for appellant.

Leonie M. Brinkema, Asst. U.S. Atty., Alexandria, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before WIDENER, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Gonzalo Salvador Martin Tello appeals from his jury convictions for knowingly importing cocaine, and possessing cocaine with intent to distribute, in violation of 21 U.S.C. §§ 952, 960 and 841(a)(1).

Tello contends that the district court erred in admitting evidence concerning the suspicions of customs agents leading to his detention; that there was insufficient evidence to support the jury convictions; and that the court's comments on portions of the evidence deprived him of a fair trial. We find there is not sufficient merit in any of these contentions to warrant reversal. Tello's argument concerning the court's comments poses the most difficult question, but we are persuaded that under the circumstances of his trial, the trial judge's comments did not constitute error.

Gonzalo Tello is a citizen and resident of Peru. On October 16, 1981, immigration and customs officials became suspicious of Tello during his routine legal entry into this country at Dulles International Airport. After responding initially to questions by immigration officials, Tello presented himself for customs inspection, where officials questioned him further and inspected his suitcase. This routine inspection disclosed no contraband, but customs officials remained suspicious. Subsequent x-rays of Tello's suitcase likewise revealed no contraband, but drilling and dismantling of the suitcase uncovered 510 grams of cocaine.

During his trial, Tello testified that he was an expert on fisheries and had traveled extensively throughout Central and South America as a consultant for the United Nations. He stated that the purpose of his

trip to the United States was to visit a young American woman whom he had become friendly with while she was traveling in Peru. Tello did not deny possessing the cocaine or bringing it into the United States. The theory of his defense was that he had been a "mule" for some unknown drug smuggler who had used him as an unknowing courier to transport the drug. He introduced expert evidence showing that the use of such "mules" is a standard drug smuggling technique. His expert witness testified that narcotics smugglers sometimes attach narcotics to automobiles and seagoing vessels unbeknownst to the operators of the carriers, retrieving the narcotics once the carrier clears international borders. The expert explained that smugglers also use this technique by selecting unwitting individuals and planting narcotics on their persons or in their belongings.

Tello testified that prior to his trip to the United States, he had visited a large open market in Lima, Peru, to purchase a suitcase. He stated that while shopping in the marketplace a woman he did not know and could not describe approached and sold him the suitcase. Tello claimed that prior to meeting the woman, he had already shopped in some of the market's stalls, and that he purchased the suitcase from her because it was the appropriate size. Tello testified that he then took the suitcase to his home, where it remained for three days until he departed by airplane for the United States. He further testified that a number of his friends in Peru knew of his trip to the United States.

The trial was concluded and submitted to the jury at the end of the first trial day, and the jury commenced deliberations early the following morning. After approximately 3½ hours of deliberation,[1] the jury reported to the court that they were deadlocked 6-to-6 and that they were all firm in their views. The court again briefly instructed the jury on the law, and then made the following comment on the evidence:

Now, let's back up right there. We know that he [the defendant] had a bag with him, and that in that bag they found some cocaine. Now, the facts that predated his coming into the United States on the 16th was, according to his testimony, that on November 12th he went to this outdoor market that I think he described as maybe 40 acres, and some faceless individual in the crowd called to him and said: Do you want to buy a bag; or he had some dialogue with her. Now, he bought the bag from her, and he tells you that he never put any cocaine in that bag.

So, you have got to decide for yourselves: Now, at the time this faceless person called to him and sold him the bag, had somebody else already put cocaine in it? Or, if you can't figure out what happened there, then figure out that he had custody of the bag from the 12th to the 16th when he was finally picked up at Dulles Airport, and who had an opportunity to do anything in the way of almost rebuilding the bag to get cocaine in it during that period of time.

Now, nothing was said by him at the time he bought the bag that he told this lady where he was going, or that she had any idea where he was going. So, you can think to yourself: Now, if the seller of the bag didn't know where he was going, how would they ever catch up with the cocaine if they had dumped it on somebody to bring into the United States?

Another thing that you ought to take into consideration is that the bag had a Continental Airlines first class stamp on it, and nothing was ever said about that stamp being on it at the time that he bought it. Now, bear in mind that he had it from the 12th to the 15th when he left down there, and he came in on the 16th. He never testified that he took any other trips.

So, you stop and think about all that sort of thing, because these are the facts in the case.

---

1. The jury previously informed the court by note that they were deadlocked after 2½ hours of deliberation. The court then relieved the jury for lunch. After returning from lunch, the jury received brief supplemental instructions which are not challenged on appeal.

The broad rule governing the role of federal judges in commenting on evidence has remained constant over the years. The standard adopted in *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), is still the most frequently cited statement of the contours of this role.

It is within [the judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important. . . .

This privilege of the judge to comment on the facts has its inherent limitations. His discretion is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office. In commenting upon testimony he may not assume the role of a witness. He may analyze and dissect the evidence, but he may not either distort it or add to it. . . . This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence "should be so given as not to mislead, and especially that it should not be one-sided;" that "deductions and theories not warranted by the evidence should be studiously avoided."

*Id.* at 469–70, 53 S.Ct. at 699 (1933). *See also United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933).

One can suspect that the *Quercia* standard has remained so long intact and has received universal acceptance due to its adaptability to the circumstances of any trial. The inherent diversity of trials requires guidance by general standards—the comments of a judge necessarily must be gauged in the circumstances of each trial. The cases which have addressed the question of judicial comment in the half-century since *Quercia* have accordingly turned on a variety of general considerations, rather than on a comprehensive catalog of evidence that may be appropriately subject to comment.[2]

The trial court, in commenting on the evidence, need not refer to all of it. *United States v. Bentvena,* 319 F.2d 916, 940 n. 14 (2d Cir.1963). The court should insure, however, that the facts are accurately discussed, *see Hellman v. United States,* 339 F.2d 36 (5th Cir.1964), and that if the evidence is summarized, both sides are analyzed. *Boatright v. United States,* 105 F.2d 737, 739 (8th Cir.1939). The court's comments also should be balanced and not slanted towards conviction. *See Evans v. Wright,* 505 F.2d 287 (4th Cir. 1974); *United States v. Dunmore,* 446 F.2d 1214 (8th Cir.1971), *cert. denied,* 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); *United States v. Sawyers,* 423 F.2d 1335, 1342 (4th Cir.1970); *Lovely v. United States,* 175 F.2d 312, 315 (4th Cir.), *cert. denied,* 338 U.S. 834, 70 S.Ct. 38, 94 L.Ed. 508 (1949); *Wheatley v. United States,* 159 F.2d 599, 602 (4th Cir.1946). It is particularly vital that the trial judge also instruct the jurors that his comments are not binding upon them, but are only personal views expressed for the purpose of assisting them, and that they are the sole judges of the evidence. *See Wheatley, supra; Lovely, supra.* A judge should give this instruction in sufficient proximity to his comment so that the jury will have it clearly in mind when the comment is made. *Billeci v. United States,* 184 F.2d 394, 403 (D.C.Cir.1950); *see also United States v. Jacquillon,* 469 F.2d 380, 387 (5th Cir.1972).

Tello contends that the court violated these guidelines. He argues that the court not only ignored important defense theories and evidence, but effectively advised the jury that he was guilty of the charges.

It is true that the trial judge's comments may have been damaging to Tello's defense. His references to the "faceless individual" who sold Tello the suitcase pointed to the weakness of that portion of his testimony. The trial court again underscored the probative weakness of Tello's testimony by suggesting to the jury that they consider the likelihood that an unknown person

---

2. For a good general survey on the power of federal judges to summarize and comment on the evidence, see 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 107 (1982).

could have reconstructed the suitcase and placed the cocaine in it. These remarks went to the core issue of whether Tello had knowledge that there was cocaine in the suitcase.

It is also true that the judge did not comment on all of the evidence. He did not discuss Tello's good character evidence or the expert testimony on the "mule" system. The critical evidence, however, was Tello's own testimony. Although the manner in which he carried the cocaine into the United States was strong circumstantial evidence of his intent, Tello's testimony was the only direct evidence bearing on this key issue. There was little that the court need have explained about the character or expert testimony. It was clear and uncontested— thus it required no clarification. We do not think, therefore, that the judge erred in restricting his comments to the part of the evidence exerting the greatest probative force on the question of intent.

██ The judge's comments contained no direct expression of his opinion of the evidence or of Tello's credibility, and stopped short of expressing any opinion of Tello's guilt. To be sure, the jury could have interpreted his comments as an opinion of the interplay of the evidence, and even as an

opinion of its probative force. A federal trial judge, however, is permitted to express such opinions as long as he stays within his role in the fact-finding process and explains to the jury that he is only assisting them as the ultimate triers of fact.[3]

The trial judge's conduct in the present case was deficient in that he failed to emphasize to the jury at the specific time he commented on the evidence that it was the sole judge of the facts. At the conclusion of his comments, the judge only added that "while I told you before that I wasn't going to summarize the evidence and comment on it, I am doing it simply because I think it might help you out." This statement referred to the instructions which the court gave to the jury at the conclusion of the trial on the previous day. At that time he emphasized to the jury the limited effect of a judge's remarks.[4] We believe under these circumstances that the jury fully understood the respective duties and responsibilities of judge and jury in resolving the factual issues at hand. Although the judge had given the detailed instructions on the previous day, only three and one-half hours of jury time elapsed between the instructions and his comments on the evidence. The better practice undoubtedly would have

**3.** See, e.g., Evans v. Wright, 505 F.2d 287 (4th Cir.1974); Scritchfield v. Kennedy, 103 F.2d 467, 471 (10th Cir.1939); Maxey v. Chapman, 224 F.2d 474, 477 (4th Cir.1955). See generally 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 107[05] (1982).

**4.** The trial judge's instruction at the conclusion of the evidence charged, among other things:
The law of the United States permits the judge to comment to the jury on the evidence in the case. Such comments are only expressions of the judge's opinion as to the facts, and the jury may disregard them entirely since the jurors are the sole judges of the facts.
I don't believe I gave you any opportunity to disregard any of my comments, ladies and gentlemen, because I don't believe I commented on the evidence. But, had I done so, you could.
During the course of the trial I occasionally asked questions of a witness in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the matters to which my questions may have related. Remember at all times

that you as jurors are at liberty to disregard all comments of the Court in arriving at your findings as to the facts.
It is proper to add the caution that nothing said in these instructions, nothing in any form of verdict prepared for your convenience, is to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.
I told you earlier that my only ambition is to see that the parties receive a fair and impartial trial, and then charge you correctly as to the law, and then let you go back to your room and do your duty.
If any reference by the Court or by counsel to matters of evidence does not coincide with your own recollection, it is your recollection which should control during your deliberations.
You as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

been to repeat the admonition of the previous day, but considering the emphasis of the instructions and the judge's reference to them at the time of his comments, we cannot say that his comments violated the *Quercia* standard.

■ The fundamental principle circumscribing a judge's power to comment on the evidence is that the comment must serve to instruct and assist the jury in understanding the facts and issues in dispute. The possibility that the comment may have an effect on the jury's deliberations is not determinative of whether the comment is grounds for reversal. If the effect is unfair, there is ground for reversal, but the rule allowing comment presumes that the comment will have some effect upon a jury's deliberations. Ideally, the effect will be positive—aiding the jury to separate wheat from chaff, to assign proper priorities to factual issues, and to facilitate the application of law to factual findings.

■ Apart from jury direction as a matter of law, a judge acts improperly if his comments leave the jury with no option as to the ultimate decision which they should reach. In order to insure that such interferences will not occur, many state jurisdictions prohibit a trial judge from commenting on the evidence. *See generally* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 107[01] (1982). In the federal court system, however, trial judges are encouraged to assist a jury with its task of resolving factual questions. Nevertheless, experienced trial judges are wary of crossing the line from useful assistance to usurpation of the jury's function. When that line is approached, the reviewing court must carefully weigh the circumstances of each trial and assure that the jury's role as the ultimate trier of fact is preserved. We have done that here and do not feel that the trial judge by his comments on the evidence usurped the jury's function, thereby denying Tello a fair trial.

We therefore affirm.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

The role of a trial judge approaches at times the impossible in terms of the demands placed on him or her, especially when decisions must be made in the pressure-packed surroundings of a jury trial in a criminal case. When, in the cool of an appellate judge's chambers, the action of the district judge is reviewed there is inevitably the troubling aspect that the appeals judge can decide with the benefit of a hindsight not available to the judicial official who presided at trial.

However, the test is not whether the appellate judge could have performed any better, or even as well, had his and the trial judge's roles been reversed. The question is rather whether the key consideration of impartiality has been achieved throughout the trial. *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). I have no doubt that the district judge intended to be impartial and strove to achieve even-handedness. Regrettably, however, I am compelled to dissent for the remarks made, in the course of supplemental jury instructions, indicated clearly to me a predilection for a certain outcome, a predisposition favoring a verdict of guilty.

Twice the pejorative adjective "faceless" preceded references to a supposed vendor of the bag carrying cocaine concealed within a hidden compartment. That usage conveys to me a marked disbelief in the existence of the "individual" or "person." With that as a mood-setter, the district judge went on to ask "who had an opportunity to do anything?", thereby evidencing strong distrust in a principal factual ingredient of the defense theory. That same distaste for the defendant's story stands revealed by the statement beginning "So, you can think to yourself . . ." (English translation: "How in the world could anything so improbable ever have happened?").

That summary dismissal of the essentials of the defendant's case as unworthy of serious consideration is finally underscored by the district judge's concluding remark: "So, you stop and think about all that sort of

thing, because these are the facts in the case."

In sum, the defendant in a close case, where the jury, prior to the supplemental instructions, had been deadlocked 6-to-6, was denied a fair and impartial trial. Accordingly, I dissent from the refusal to reverse and remand for a new trial.