822 F.2d 56
 23 Fed. R. Evid. Serv. 700
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond WAGSTAFF, Defendant-Appellant.
 No. 86-5585.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1987.
Decided June 17, 1987.
 
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 Kathleen Gallogly Cox (Cook, Howard, Downes & Tracy, on brief), for appellant.
 James Christopher Savage, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Raymond Wagstaff ("Wagstaff," "Appellant") was indicted on three counts of bank robbery in violation of 18 U.S.C. Secs. 2113(a) and (g), bank larceny, in violation of 18 U.S.C. Secs. 2113(b) and (g), and unlawful entry with intent to steal, in violation of 18 U.S.C. Secs. 2113(a) and (g). After a two-day jury trial, a verdict of guilty was returned on all three counts. Wagstaff was sentenced to imprisonment for twenty years on Count 1, one year on Count 2, and twenty years on Count 3. Sentences on Counts 2 and 3 were to run concurrent with the sentence on Count 1 and were to merge if the convictions were affirmed on appeal.
 
 
 2
 Wagstaff timely filed an appeal of his conviction and we find, after careful review of the record, that the conviction must be reversed and remanded to the trial court for a new trial. It is our conclusion that the trial court did not follow the mandates of James v. Kentucky, 466 U.S. 341 (1984), and thus did not give the jury the proper "no-adverse-inference" instruction. Moreover, we conclude that the appellant's statement, "So you have somebody who can identify me during the robbery," was made in violation of his Fifth Amendment right to remain silent, as enunciated by the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966), and therefore should have been suppressed by the trial court. It is on these grounds that we must reverse the conviction and remand to the trial court for a new trial.
 
 I.
 
 3
 The Fifth Amendment of the United States Constitution provides that "no person shall be compelled in any criminal case to be a witness against himself." This privilege against compulsory self incrimination is an important and highly protected constitutional guarantee. As the Court noted in Carter v. Kentucky, it:
 
 
 4
 reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; ... our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates "a fair state-individual balance by requiring the government ..., in its contest with the individual to shoulder the entire load ..., our distrust of self-deprecatory statements; and our realization that the privilege, while, sometimes "a shelter to the guilty," is often "a protection to the innocent."
 
 
 5
 Carter v. Kentucky, 450 U.S. 288, 299 (1981) (citing Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964)).
 
 
 6
 In Carter, the defendant did not introduce any evidence at trial to support his defense and at the close of the case he requested the judge to give a "no-adverse-inference" jury instruction. The trial judge refused the instruction. On appeal, the Kentucky Supreme Court affirmed the trial court holding that a "no-adverse-inference" instruction would have required the judge to "comment upon" the defendant's failure to testify in violation of a Kentucky statute prohibiting such a comment. The United States Supreme Court granted certiorari and reversed the state court. The Supreme Court held that "the Fifth Amendment required a criminal trial judge to give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." Carter, supra, at 300.
 
 
 7
 The holding in Carter was reaffirmed by the Supreme Court in James v. Kentucky, supra. In James, the trial judge overruled defense counsel's request "that an admonition be given to the jury that no emphasis be given to the defendant's failure to testify." James, supra, at 343. Ultimately, the defendant was convicted. On appeal to the Kentucky Supreme Court, the defendant argued that the trial judge's failure to give a "no-adverse-inference" instruction violated Carter v. Kentucky. The Kentucky Supreme Court affirmed the trial judge's ruling, holding that there was a cognizable difference under Kentucky law between an admonition and an instruction, and the defendant, who would have been entitled to an instruction, had requested only an admonition.
 
 
 8
 On appeal the United States Supreme Court reaffirmed its holding in Carter that in order fully to effectuate the right to remain silent, if requested to do so, a trial judge must instruct the jury not to draw an adverse inference from the defendant's failure to testify. James, supra, at 344-45.
 
 
 9
 In the instant case, the defendant did not testify and his counsel proffered the following "no-adverse-inference" instruction to the Court:
 
 
 10
 The law does not compel a defendant in a criminal case to take the witness stand and testify, and no presumption of guilt may be raised, and no inference of any kind may be drawn, from the failure of a defendant to testify.
 
 
 11
 As stated before, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.
 
 
 12
 Instead of giving the proffered instruction, the Court, over the objection of the defendant, instructed the jury as follows:
 
 
 13
 The law does not require a defendant to take the stand to testify, and the defendant chose not to do so. That was his right and you may not infer from his decision not to testify that he is more likely to be guilty than if he had chosen to testify.
 
 
 14
 The trial court's instruction did not meet constitutional muster. The instruction failed to tell the jury in plain, unequivocal language that it could not draw an adverse inference from the defendant's failure to take the stand. Accordingly, we must reverse the conviction and remand the case to the district court for a new trial.
 
 II.
 
 15
 Appellant argues that the trial court committed constitutional error when it denied his motion to suppress. We agree.
 
 
 16
 Prior to trial, appellant moved for the suppression of three statements he made after arrest, arguing that the statements were made in violation of Miranda v. Arizona, supra, and thus should not have been introduced as evidence in trial because they violated his privilege against self incrimination. While the appellant's motion requested the suppression of the following three statements made by the appellant after his arrest, "I guess you are going to take the 80's away from me"; "I haven't even been out 60 days and now I'm going back in. You haven't seen my true potential"; "So you have somebody who can identify me during the robbery," the record reveals that it was only the latter statement which appellant's attorney viewed as a violation of Miranda. Moreover, appellant's brief, while including all three statements in its presentation, only argues that the final statement constitutes a Miranda violation. Our analysis on appeal is, therefore, limited to whether the trial court committed error in refusing to suppress the statement, "So you have somebody who can identify me during the robbery".[1]
 
 
 17
 At the time of his arrest, the appellant was advised of his Miranda rights. Appellant was transported to the FBI office where he was again advised of his rights. While at the office Wagstaff stated that he did not want to talk to the agents and consequently no questions were initially asked of him. While being transported from the FBI office to the lockup, Wagstaff voluntarily stated, "I guess you're going to take the 80's away from me." When Wagstaff reached the lockup, he volunteered another statement, "I haven't even been out 60 days and now I'm going back in. You haven't seen my true potential."
 
 
 18
 The pertinent facts for our inquiry, however, begin when Wagstaff reached the lockup. As he was being processed, he was asked routine booking questions by the police. During this process, the agent, upon finding Wagstaff's billfold, looked through it and found several slips of paper each of which contained an identifiable name. The agent then asked Wagstaff who the various names were. After identifying Lawrence Wagstaff as his cousin, and Anthony Wagstaff as his brother, the appellant stated, "So you have somebody who can identify me during the robbery." It is this statement which the trial judge erroneously concluded was voluntary.
 
 
 19
 The trial judge was correct in phrasing the issue at the conclusion of the suppression hearing as, "whether defendant's statements were truly voluntary." Moreover, he was correct in his statement "that there [was] no constitutional prohibition against the agent's merely listening to defendant's voluntary, volunteered statements and using them against him at trial." However, despite the trial court's recognition of the issue, his ultimate conclusion to deny Wagstaff's motion to suppress his statement requires reversal.
 
 
 20
 In Rhode Island v. Innis, 446 U.S. 291 (1980), the Court rejected a narrow interpretation of Miranda. It stated that "[t]he concern of the Court in Miranda was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against self incrimination." Innis, supra at 299. The court ruled that a defendant could be interrogated "whenever a person in custody [was] subjected to either express questioning or its functional equivalent." Innis, supra at 301. The court further defined "the functional equivalent of express questioning," holding that it meant "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the subject." Innis, supra at 301.
 
 
 21
 It is this Court's view that the only purpose for the agent's questions to the appellant at the lockup was to elicit from him potentially incriminating statements. Accordingly, we find the questions in violation of Miranda and any statements flowing from the interrogation fruit of the poisonous tree.
 
 
 22
 The record is clear that Wagstaff chose not to speak after the agent read him his Miranda rights. Nevertheless, the agent--who knew the names in the billfold, particularly that of Lawrence Wagstaff whom he had previously investigated and who was also arrested simultaneously with the appellant--still chose to ask appellant who he [Lawrence Wagstaff] was. This question was responded to by the answer, "his cousin," and then followed by the incriminating statement, "So you have somebody who can identify me during the robbery."
 
 
 23
 Because we conclude that this question "Who is this" constitutes the type of "subtle interrogation" discussed in Innis, supra, we find that the incriminating statement, though not directly responsive to the question, was fruit of the poisonous tree and should have been suppressed.
 
 III.
 
 24
 While our reversal is premised on the trial court's refusal to grant a constitutionally adequate "no-adverse-inference" instruction and its admission into evidence of a statement procured in violation of appellant's Fifth Amendment privilege against self incrimination, the defendant has argued several other alleged errors which, while not rising to a level of reversible error, nevertheless, deserve our attention.
 
 
 25
 The defendant argues that it was prejudicial error for the trial judge, as he did, to refer to the alleged crime as a robbery during his instruction to the jury.[2] Though we agree that it was error, we conclude that it was harmless.
 
 
 26
 A key issue at trial was whether the offense, testified to by the witnesses, constituted a robbery or a larceny. In effect, the trial judge improperly invaded the province of the jury as to this issue. See United States v. Tello, 707 F.2d 85, 90 (4th Cir.1983). While not, under the record in this case, prejudicial to the extent of requiring a reversal, it was error and is to be avoided at any new trial.
 
 
 27
 Defendant also argues that the judge's refusal to grant a cautionary instruction on oral admissions was reversible error.[3] We disagree.
 
 
 28
 During closing argument, defendant's attorney spent some considerable effort in attacking the credibility of one Lawrence Wagstaff, a government witness and a self confessed accomplice. Indeed, counsel characterized Wagstaff's testimony as "a bunch of lies." Her efforts taken in context were to pit the testimony of Lawrence Wagstaff against that of the defendant's alibi witnesses.
 
 
 29
 The prosecutor in rebuttal made reference to testimony dealing with the defendant's alleged statements made at the time of his arrest. In context, the reference to the defendant's so-called admissions was specifically responsive to defense counsel's attack on the credibility of Lawrence Wagstaff, and was an effort to suggest that the defendant's alleged oral statements were supportive of Lawrence Wagstaff's testimony.
 
 
 30
 In U.S. v. Brown, 615 F.2d 1020 (4th Cir.1980) we held that "the giving of [an instruction on oral admissions] is discretionary with the district court depending upon the facts of the case." Id. at 1023 (citations omitted). We went on to hold that "there may be cases in which the facts are such that the failure to give such an instruction if requested would amount to an abuse of discretion and be reversible error." Id.
 
 
 31
 In the instant case, we conclude that the trial court did not abuse its discretion by refusing the instruction. The prosecutor's rebuttal argument was a fair response to that of defense counsel. It dealt with credibility and did not give rise to the need for a cautionary instruction as requested. The court's instructions on credibility were, as in Brown, supra, sufficient.
 
 
 32
 Defendant finally argues that it was improper for the trial judge to allow the government to rehabilitate its own witness with a prior consistent statement. We agree with the defendant and find the rehabilitation improper under the Rules, however, we find the error harmless.
 
 
 33
 Lawrence Wagstaff was originally indicted as a co-defendant with his cousin Raymond Wagstaff in the alleged robbery of the Irvington Federal Savings & Loan on December 30, 1985. Lawrence Wagstaff eventually entered into a plea agreement with the Government which allowed him to plead guilty to conspiracy, a lesser offense, in exchange for his cooperating with the Government's prosecution of his cousin, Raymond Wagstaff, in the alleged robbery of the Irvington Federal Savings and Loan.
 
 
 34
 At defendant's trial, Lawrence Wagstaff testified on behalf of the Government. On cross examination, the defense counsel questioned him about certain statements he had allegedly made to the FBI at his arrest which were inconsistent with his direct testimony. On redirect, and in an attempt to rehabilitate its witness, the Government introduced a sworn statement by Lawrence Wagstaff which was consistent with his testimony on direct examination. This statement had been secured on April 1, 1985, just two weeks prior to trial.
 
 
 35
 Rule 801(d)(1)(B) of the Federal Rules of Evidence governs the admissibility of prior consistent statements of a witness, and allows such statements to be admitted if used to rebut an express or implied charge of recent fabrication or improper motive or influence. In the instant case, the sworn statement by Lawrence Wagstaff was nothing more than an attempt to lock the defendant into his testimony. In fact, the statement itself stated that it was made "to create a record so that the Government would have a sworn statement,". This type of rehabilitation is improper under Rule 801(d)(1)(B).
 
 III.
 
 36
 For the reasons stated herein, we find that this defendant was unfairly prejudiced. Accordingly, we REVERSE the conviction and REMAND the case to the district court for a new trial consistent with the views expressed herein.
 
 
 37
 REVERSED AND REMANDED.
 
 
 
 [1]
 Had the Appellant's argument included the other two statements, "I guess you are going to take the 80's away from me" and "I haven't even been out 60 days and now I'm going back in. You haven't seen my true potential", we would have affirmed the trial court's ruling as to them. The record is quite clear that the appellant volunteered those statements to the agent and thus they could not have been the result of an unconstitutional custodial interrogation
 
 
 [2]
 The judge gave the following instructions:
 The important question in the case is whether the defendant was, in fact, the perpetrator of the robbery that is charged in the case.
 It is not essential that the witness be free from doubt as to the correctness of his identification. What is essential is that you, as jurors, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant as the perpetrator of the bank robbery from the identification testimony itself or from other collaborative circumstances. (emphasis added).
 
 
 [3]
 Defendant sought the following cautionary instruction:
 Evidence as to any oral admission, claimed to have been made outside of court by a party to any case, should always be considered with caution and weighed with great care. The person making the alleged admission may have been mistaken, or may not have expressed clearly the meaning intended; or the witness testifying to an alleged admission may have misunderstood, or may have misquoted what was actually said.
 However, when an oral admission made outside of court is proved by reliable evidence, such an admission may be treated as trustworthy, and should be considered along with all other evidence in the case and given such weight as you feel it deserves under the circumstances.