UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman L. GROOMS, Defendant–
Appellant.

No. 92–5272.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1993.

Decided Aug. 24, 1993.

Steven David Rosenfield, Charlottesville, VA, argued for defendant-appellant.

Donald Ray Wolthuis, Asst. U.S. Atty., Roanoke, VA, argued (E. Montgomery Tucker, U.S. Atty., Christopher W. Schinstock, Third Year Law Student, on the brief), for plaintiff-appellee.

Before HAMILTON and LUTTIG, Circuit Judges, and HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION

HEANEY, Senior Circuit Judge:

Norman Grooms was convicted of possessing crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) in the United States District Court for the Western District of Virginia. He argues on appeal that the trial court twice abused its discretion in admitting evidence on behalf of the government. Although we agree that admission of Grooms's statement of his whereabouts on the day of the charged offense was clearly erroneous, we nonetheless find that the error was harmless and consequently affirm the conviction.

I

Grooms's indictment stemmed from the sale of crack cocaine to a federal agent in Charlottesville, Virginia, on January 16, 1991. Later the same day, Grooms was arrested by the Charlottesville police on an unrelated drug charge, to which he later pleaded guilty. On three occasions prior to his trial for the instant offense, an officer of the Charlottesville police approached Grooms about the possibility of his cooperating with the authorities in exchange for leniency. On each of these occasions Grooms indicated that the instant charge was a mistake and that he had been out of town on the day in question.

Grooms brought two pretrial motions to exclude evidence both of his arrest and conviction in state court and of his statements regarding his whereabouts on the day of the charged offense. The trial court allowed the evidence, and Grooms argues that it abused its discretion in so doing.

## II

Although the discussion of these motions in chambers by court and counsel blends the issues together, *see* App. at 7–12, we shall attempt to untangle the rulings and take each of them up in turn.

### A

In response to the motion to exclude evidence of the arrest and conviction on state charges, the government indicated that it did "not intend to prove the conviction," but indicated, if only by omission, that it intended to introduce the arrest as evidence that Grooms was in Charlottesville, and in the same general area of town on the day in question. *See id.* at 8. Although the court did not explicitly rule on the issue, the overall sense one gets from reading the transcript of the colloquy is that the evidence would be admitted, as it subsequently was.

The government first attempted to introduce this evidence through Special Agent Swan, the federal agent who had purchased the drugs underlying the instant offense. When this met objection, the government simply concluded Swan's testimony. The evidence first came in during the testimony of Officer Harding, the police officer who had approached Grooms about cooperating. When the government began the line of questioning involving the alibi, Grooms renewed his objection to this testimony, and the court indicated that its ruling would turn on the manner in which the evidence was presented. During Harding's description of his third encounter with Grooms, he indicated that he had told Grooms he should "reconsider cooperating with us because I have checked and I know now that you pled guilty in the city in the same area for having crack on the same day we've indicted for. You can't be saying you weren't in town." *Id.* at

111. No specific objection was made at this point in Harding's testimony.

The evidence was introduced fully by Detective Fields of the Charlottesville police, the officer who had arrested Grooms later on the day in question. Fields testified that he had arrested Grooms for possession of cocaine in the same vicinity of Charlottesville as, according to Swan, Grooms had earlier committed the instant offense. The photograph of Grooms taken in conjunction with his arrest was introduced, and the arrest itself was described in detail. *See id.* at 114–17. When the government asked "Did that charge go on through the courts?" the court, without objection, asked what purpose would be served in going any further. The government replied that "the only purpose would be to introduce the conviction to which there was a plea of guilty to a charge charging him with being in Charlottesville and possessing cocaine in Charlottesville." *Id.* at 118. The court ruled that the line of questioning had gone far enough and instructed the jury "to disregard the colloquy between counsel and me about going into any further in the case." *Id.*

Grooms argues that introduction of the arrest was clearly erroneous and that the limiting instruction given to the jury was insufficient. Even assuming that the necessary objections were timely made, we find that the trial court acted within its discretion in admitting the evidence of Grooms's arrest. Federal Rule of Evidence 404(b) prohibits introduction of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but allows such evidence "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Testimony that Grooms was arrested later the same day as the instant offense in the same area of Charlottesville for possession of cocaine would tend to prove opportunity, identity, and absence of mistake. Such testimony was therefore admissible and Grooms's arguments to the contrary are without merit.

### B

As noted earlier, the government also introduced evidence that Grooms had told

Harding he was out of town on the day in question. This turns out to have been a rather transparent and ill-conceived fabrication, but it does not follow that evidence of Grooms's falsehood is admissible.

Grooms asserted before the trial court and this court that the testimony in question was hearsay. The government and the trial court suggested that it was either an admission or a statement against interest. Although both suggestions appear flawed, we need not address them because the statements are not being offered for the truth of the matter asserted (*i.e.*, that Grooms was out of town), and they are therefore not hearsay. *See* Fed.R.Evid. 801(c). Grooms also argued before the trial court that the statements resulted from custodial interrogation and therefore violated his Miranda rights, but he has abandoned that argument on appeal.

The error, if any, in admitting these statements is that they are not relevant to the government's case-in-chief.[1] Admittedly, if Grooms had either taken the stand or relied on an alibi defense,[2] the testimony may have been admissible either to impeach or rebut. But Grooms made his intentions in regard to both of these issues perfectly clear before trial: he would not assert an alibi defense and he would not take the stand.[3] Because the evidence could not be used as impeachment or rebuttal, we must then determine whether the testimony was relevant to the government's case-in-chief.

The government argues that the statements tended to prove their opposite; that is, that because the statements were obvious fabrications, Grooms must have been in Charlottesville on the day in question. The government's argument requires an inferential leap that is patently unreasonable. The evidence of Grooms's fabricated alibi proves nothing other than that he lied. For evidence to be admissible, it must be relevant. Fed.R.Evid. 402. Relevant evidence is defined as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The only facts that could be made more probable by this evidence are either that Grooms was in fact out of town or that Grooms is a bald-faced liar, and neither of these "facts" is of consequence to the determination of the action when offered by the government in its case-in-chief. The evidence is therefore not relevant, and it follows quite easily that the district court abused its discretion in admitting it.

■ We assume that the only objection preserved was under rule 403, *see supra* n. 1, but the analysis under that rule is simplified when the evidence has no probative value. Little prejudice is required to substantially outweigh the probative value of evidence that is not relevant, and testimony that the ac-

---

**1.** One might question, although the government does not do so explicitly, whether this issue was adequately preserved for appeal. There can be no question that Grooms objected repeatedly to the introduction of this testimony, but these objections were on a variety of grounds, as discussed in the text *supra*. Federal Rule of Evidence 103(a)(1) requires that an objection to the introduction of evidence "stat[e] the specific ground of objection." During the colloquy on the motions in limine, Grooms objected to the "prejudicial" and "inflammatory" nature of the evidence. App. at 9. When he moved for a mistrial at the close of the evidence, he indicated that the statements are "so much more inflammatory and prejudicial than they are probative," *id.* at 130, using the language of Federal Rule of Evidence 403. Although no objection specifically mentions relevance, an objection under rule 403 appears to have been adequately preserved, and the weighing required by rule 403 is certainly affected by a determination that the evidence

is not relevant and therefore has no probative value.

**2.** Grooms argues for the first time on appeal that admission of these statements violated the Federal Rule of Criminal Procedure governing withdrawn alibis, which provides that "[e]vidence of an intention to rely upon an alibi defense, later withdrawn, *or of statements made in connection with such intention*, is not, in any civil or criminal proceeding, admissible against the person who gave notice of the intention." Fed. R.Crim.P. 12.1(f) (emphasis added). Because we hold that this testimony was not properly admitted under the rules of evidence, we need not reach the merits of this issue.

**3.** Grooms need not have given notice that he would not take the stand, as he must of his intention to assert an alibi, *see* Fed.R.Crim.P. 12.1, for the government would not be entitled to impeach his credibility until after he testified.

cused is a liar would unquestionably prejudice him. It is very likely that the probability of the introduction of this evidence to impeach Grooms is what led him to choose not to testify on his own behalf, for any prejudice that might follow would substantially outweigh whatever benefit might have been gained by having him deny any role in the charged offense.

### III

■ Although we find that the district court abused its discretion in admitting evidence of Grooms's alibi, the question whether this error was harmless remains. "As we have previously noted, 'in the realm of non-constitutional error, the appropriate test of harmlessness ... is whether we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." ' " *United States v. Sanders,* 964 F.2d 295, 299 (4th Cir.1992) (quoting *United States v. Nyman,* 649 F.2d 208, 211–12 (4th Cir.1980), which in turn quotes *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). "The outcome of a harmless error analysis is by necessity fact-specific. What may be harmless within the context of one set of facts may prove to be otherwise within the context of another." *United States v. Mason,* 993 F.2d 406, 409 (4th Cir.1993).

In this case, the only issue for trial was, as the district court noted in denying Grooms's motion for a mistrial, the issue of identity. *See* App. at 151–52. Although Grooms presented no evidence, his defense rested on mistaken identity. The only evidence in support of this theory was the name "Melvin Grooms," Norman's brother, listed on the report filed by Special Agent Swan when the drugs were sent to be analyzed. Swan testified that "it was a mental mistake on my part." *Id.* at 70. On cross-examination he testified that he did not even know of a Melvin Grooms, nor did he know that he is Norman's brother. *Id.* at 90–91. Further evidence was introduced that Melvin Grooms had previously been arrested and prosecuted for the sale of crack cocaine. *Id.* at 99.

The government introduced evidence both that Melvin Grooms was elsewhere at the time of the sale and that Norman Grooms was seen repeatedly on the day in question in the area in which the drug purchase took place. Testimony was introduced that Melvin Grooms had been at work at least until 3:30 p.m. on the day in question and that his employer requires that he wear a uniform. *Id.* at 120–23. (The drug sale took place at approximately 3:30 p.m. and the seller was wearing sweatpants, a jacket, and a baseball cap. *Id.* at 65–66.) In addition to the testimony of Special Agent Swan that he had "absolutely no doubt" that he purchased the drugs from Norman Grooms, *id.* at 70, Swan's backup, who knew both Melvin and Norman Grooms by sight, testified that he drove by the site of the transaction two or three minutes following the sale and saw Norman Grooms. *Id.* at 95–98. Two other officers testified that Norman Grooms was seen later the same day in the same area and that his clothing matched the description given them by Swan. *Id.* at 101–04, 107–08.

The evidence against Grooms was more than sufficient to support his conviction. The only issue was that of identity and Grooms's credibility did not enter into the picture. Extensive testimony was introduced that Norman Grooms was in the area in which the purchase took place—that he was in fact arrested in possession of crack cocaine later the same day in the same vicinity—and Swan did not waver in his certainty that Norman Grooms was the seller. Evidence was also introduced that Melvin Grooms was just getting off work at the time of the sale, and pictures of both Norman and Melvin Grooms were introduced for the jury's inspection. The only evidence on Grooms's behalf was the mention of Melvin Grooms in the report. No other evidence supported the defense theory. Given the one-sided nature of the evidence presented, we can say with fair assurance that the judgment was not substantially swayed by the trial court's error.

### IV

Although we hold that the district court abused its discretion in admitting Groom's statements regarding his whereabouts on the

day of the offense charged, we conclude, after a thorough review of the record, that such error was harmless. Because Grooms has presented no other meritorious arguments on appeal, his conviction is affirmed.

*AFFIRMED.*