42 F.3d 1387
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jameson Wyle STROBRIDGE, a/k/a Jamison Wyle Strobridge,
Defendant-Appellant.
 No. 93-5916.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 4, 1994.
Decided Dec. 12, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CR-93-57-N)
 Michael Francis Imprevento, SACKS, SACKS & IMPREVENTO, Norfolk, VA, for Appellant.
 Kevin Michael Comstock, Assistant United States Attorney, Norfolk, VA, for Appellee.
 Andrew M. Sacks, SACKS, SACKS & IMPREVENTO, Norfolk, VA, for Appellant.
 Helen F. Fahey, United States Attorney, Gregory A. Gruber, Assistant United States Attorney, Norfolk, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, HAMILTON, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Jameson Wyle Strobridge appeals his convictions and sentence for possession with the intent to distribute cocaine base and marijuana and for distribution of cocaine base. See 21 U.S.C.A. Sec. 841(a)(1) (West 1981). He principally contends that the district court erred in failing to suppress evidence seized as a result of a search of a vehicle, in commenting on the evidence during the jury charge, and in enhancing his offense level for possession of a firearm under United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(b)(1) (Nov.1992). We affirm.
 
 I.
 
 2
 On the morning of October 25, 1991, Detective M. L. Ridley and other officers from the Chesapeake Virginia Police Department executed a search warrant for narcotics in an apartment at 3140 Fairview Avenue ("# 3140"). After the search, Detective Ridley's supervisor instructed him to conduct surveillance on two vehicles parked adjacent to a nearby apartment at 3126 Fairview Avenue ("# 3126"). While he was engaged in surveillance of the automobiles, Detective Ridley observed a woman leave # 3140 and enter # 3126. Several minutes later, the woman left # 3126 accompanied by another woman, Jenise Gilchrist, and returned to # 3140. Soon after the two women departed, Detective Ridley observed Strobridge exit # 3126. Strobridge was behaving in a furtive manner; after looking to the right and left, he slowly approached one of the vehicles (hereafter referred to as the Datsun) that Detective Ridley had been directed to observe and unlocked it. As Strobridge finished unlocking the Datsun, Gilchrist exited # 3140, joined Strobridge, and the two returned to # 3126. Shortly thereafter, Strobridge and Gilchrist again exited the apartment and walked toward the Datsun. Gilchrist carried a cardboard box and a rifle case, and Strobridge carried a toolbox. Strobridge placed all of these items into the Datsun.
 
 
 3
 As a veteran narcotics officer, Detective Ridley believed that Strobridge, who he knew to have been previously charged with firearms violations, was engaged in the distribution of illegal narcotics. He suspected that at that moment Strobridge was hiding contraband because of the search that had taken place at # 3140. He approached Strobridge and Gilchrist and, believing that the weapon might be stolen, asked Strobridge for the rifle case. Although Strobridge complied, he refused to give his consent to search the Datsun, stating that he did not own the vehicle.
 
 
 4
 Moments later, other officers arrived at the scene. After determining that the Datsun belonged to Gilchrist's mother, one of the officers drove to her nearby home and obtained her consent to search. In the meantime, Detective Ridley, who remained with the vehicle, observed through a window a triple-beam scale inside the open cardboard box. Upon being notified that consent to search had been given, officers circled the vehicle with a dog trained to detect the presence of narcotics. The dog alerted on one of the Datsun's doors, and when the door was opened, the dog alerted on the toolbox. As the toolbox was removed and placed on the hood, Detective Ridley observed white powder, which he suspected was cocaine, fall from it. He then asked Strobridge whether he possessed any weapons or narcotics, to which Strobridge replied, "Check me." During the search of his clothing, a key was found in Strobridge's pants pocket that opened the toolbox. The toolbox contained individually wrapped packages of cocaine base and marijuana, $2,476 in United States currency, and a store receipt bearing Strobridge's name. Strobridge was arrested and given Miranda warnings.
 
 
 5
 By this time, Gilchrist's mother had arrived at the scene. She questioned Strobridge concerning money that she had given her daughter to purchase insurance, and he responded that it was in the toolbox with his money.
 
 
 6
 Strobridge was eventually charged in a superseding five-count indictment. At trial, he was found guilty of possession with the intent to distribute cocaine base and marijuana arising out of the October 25, 1991 arrest (Counts One and Two). He was also found guilty of distribution of cocaine base, arising from a sale he made to an undercover officer on a later date (Count Five). Strobridge was acquitted of using and carrying a firearm during and in relation to the drug-trafficking offense of October 25 (Count Three). See 18 U.S.C.A. Sec. 924(c)(1) (West Supp.1994).* The district court sentenced Strobridge to a term of 235 months imprisonment.
 
 II.
 
 7
 Strobridge first argues that the district court should have suppressed evidence seized from the Datsun and the toolbox, as well as his statement to Gilchrist's mother. After careful review, we agree with the district court that the investigatory detention was based on a reasonable suspicion, the search of the vehicle was made with the owner's consent, the search of the toolbox was based on probable cause and proper under California v. Acevedo, 500 U.S. 565 (1991), and no information was elicited from Strobridge in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Accordingly, we affirm the suppression decision on the reasoning of the district court.
 
 III.
 
 8
 Strobridge next raises numerous allegations of error relating to evidentiary rulings by the district court. He first contends that the court erred in admitting the store receipt found in the toolbox, arguing that it was not properly authenticated. See Fed.R.Evid. 901. He also asserts that the district court erred in admitting evidence seized from # 3126, maintaining that the evidence was irrelevant because the prosecution failed to establish a sufficient connection between him and the apartment. See Fed.R.Evid. 401. Finally, Strobridge claims that the district court erred in admitting testimony from police officers that was not based on their personal knowledge, see Fed.R.Evid. 602, and other testimony that was inadmissible evidence of prior bad acts, see Fed.R.Evid. 404(b).
 
 
 9
 The evidentiary rulings of the trial court are entitled to substantial deference and will not be disturbed absent a clear abuse of discretion.
 
 
 10
 United States v. Russell, 971 F.2d 1098, 1104 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993). We find no abuse of discretion. Moreover, any improper admission of this evidence or testimony was harmless error given the overwhelming evidence of Strobridge's guilt. See United States v. Grooms, 2 F.3d 85, 89 (4th Cir.1993), cert. denied, 114 S.Ct. 1550 (1994).
 
 IV.
 
 11
 Strobridge also maintains that certain comments on the evidence by the district court during the jury charge deprived him of a fair trial. See Anderson v. Warden, Md. Penitentiary, 696 F.2d 296, 299 (4th Cir.1982), cert. denied, 462 U.S. 1111 (1983) (comments by trial court may violate a defendant's Fourteenth Amendment due process right to a fair trial). Strobridge emphasizes a comment by the district court "that the particular apartment was utilized by the defendant on more--on one or more occasions," when the evidence only indicated that he exited the apartment twice on the one day that Detective Ridley was conducting surveillance outside.
 
 
 12
 A trial court is permitted to comment on the evidence to assist the jury in understanding the facts and issues in dispute. See United States v. Tello, 707 F.2d 85, 88-90 (4th Cir.1983). But, when a district court comments on the evidence, it is imperative that the facts be discussed accurately, that the comments by the district court be balanced, that the jury be instructed that the comments by the court are not binding on the jury, and that the jury is the sole finder of fact. Id.
 
 
 13
 In our view, the district court properly summarized largely undisputed facts and also instructed the jury that it could disregard comments made by the court. See United States v. Gravely, 840 F.2d 1156, 1164-65 (4th Cir.1988). To the extent that the comment concerning Strobridge's use of the apartment could be interpreted to imply that he used it more often than the evidence established, we believe that even if this was not supported entirely by the record, any misstatement by the district court amounted to no more than harmless error. See United States v. Blevins, 960 F.2d 1252, 1262-65 (4th Cir.1992).
 
 V.
 
 14
 As to his sentence, Strobridge asserts that the district court improperly enhanced his offense level under U.S.S.G. Sec. 2D1.1(b)(1) for the possession of a dangerous weapon in connection with a drug offense. He first argues that the enhancement could not properly be applied because he was acquitted of the carrying of a firearm in relation to a drug-trafficking offense that formed the basis for the enhancement. This claim has been repeatedly rejected; it is well-settled that acquitted conduct may be used to enhance a sentence once the sentencing court finds by the preponderance of the evidence that the defendant engaged in the conduct supporting the enhancement. E.g., United States v. Nelson, 6 F.3d 1049, 1057 (4th Cir.1993), cert. denied, 114 S.Ct. 2142 (1994).
 
 
 15
 Strobridge next argues that because the firearm was a rifle and was unloaded, the evidence is insufficient to support the finding of the district court that he used the firearm in connection with the drug offense. The commentary to Sec. 2D1.1 explains that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n.3); see also United States v. Hunter, 19 F.3d 895, 896 (4th Cir.1994). It is undisputed that the rifle was present during the commission of the drug offense, and the district court specifically found that it was not clearly improbable that the firearm was used in connection with the offense. Although the rifle was unloaded, there was ammunition in the carrying case, and the firearm and ammunition were carried to the vehicle simultaneously with the toolbox containing the cocaine base and marijuana. Given these facts, we cannot conclude that the finding of the district court that the rifle was used in connection with the drug offense was clearly erroneous. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 VI.
 
 16
 We have carefully considered all of the other arguments presented by Strobridge and find them to be without merit. Accordingly, we affirm Strobridge's convictions and sentence.
 
 AFFIRMED
 
 
 *
 Before the trial, the court severed the charge of possession of a firearm by a convicted felon (Count Four), see 18 U.S.C.A. Sec. 922(g)(1) (West Supp.1994), to which Strobridge later pled guilty