67 F.3d 297
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ervin DANTZLER, Defendant-Appellant.
 No. 94-5634.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 4, 1995.
Decided: October 3, 1995.
 
 ARGUED: John Herman Hare, Assistant Federal Public Defender, Columbia, SC, for Appellant. Eric William Ruschky, Assistant United States Attorney, Columbia, SC, for Appellee. ON BRIEF: J. Preston Strom, Jr., United States Attorney, Columbia, SC, for Appellee.
 OPINION
 PER CURIAM:
 
 
 1
 The sole issue in this arson case is whether evidence that other property owned by the defendant had previously burned and that he collected insurance proceeds from that fire was properly admitted. Because we believe that any error in connection with this evidence was plainly harmless, we affirm.
 
 I.
 
 2
 In May of 1991, appellant Ervin Dantzler opened a convenience store in Sumter County, South Carolina. Approximately one month before the opening, Dantzler deposited $30,000 into a checking account in the store's name. He also purchased inventory for the store from a wholesale grocer, and arranged the local oil distributor to install gasoline equipment. The oil company also provided Dantzler with restaurant supplies. These purchases were all made on credit.
 
 
 3
 Beginning in mid-June, Dantzler began to fall behind in his payment to the suppliers. Due to these problems, the oil company withdrew its pumps from the premises. Once the gasoline equipment was removed, the store's gross receipts dramatically decreased.
 
 
 4
 On July 12, 1991, Dantzler insured the store with State Farm for $160,000. When the insurance agent asked whether he had suffered any property losses in the last three years, Dantzler responded in the negative.
 
 
 5
 Within a few weeks, Dantzler's accounts were significantly in arrears. He owed the grocer over $6,000 and was indebted to the oil company for more than $50,000.
 
 
 6
 Then, on August 15, 1991, a passing truck driver reported a fire at the store. Upon inspection, a state arson investigator found no signs of forced entry and determined that the fire had been intentionally set with kerosene. Three jugs containing traces of kerosene were found at the back door of the store; the jugs were the same type as the ones used in the store restaurant. The arson investigator also interviewed Dantzler, who stated that he possessed the only keys to the store. Dantzler also told the investigator that earlier that year, a piece of rental property he owned had also burned. In connection with that arson, Dantzler received $32,000 in insurance proceeds; these funds were used to open the store checking account.
 
 
 7
 About five days after the fire, James Calhoun, who lived directly behind the store, informed the County Sheriff that on the night of the fire he saw Dantzler running away from the back of the store.
 
 
 8
 Dantzler subsequently filed an insurance claim for the convenience store property. Federal agents from the Bureau of Alcohol, Tobacco, and Firearms then executed a search warrant at Dantzler's home. They discovered approximately $1,200 to $1,800 worth of convenience store inventory, as well as several firearms. The agents estimated the store's total debt at the time of the fire to be over $100,000.
 
 
 9
 Dantzler was indicted on one count of arson and one count of being a felon in possession of firearms. See 18 U.S.C. Secs. 844(i), 922(g). At trial, the government sought to raise the matter of the rental property arson in its case-in-chief by having the arson investigator testify that the start-up funds for the business came from the insurance proceeds from that arson. The district court, however, sustained defense counsel's objection.
 
 
 10
 After the government rested, the defense asserted that it wished to introduce evidence of an alleged pattern of racial harassment of Dantzler's family to show that the convenience store arson was committed not by Dantzler but by the harassers. Specifically, the defense wished to introduce evidence regarding a 1992 arson of the mobile home behind Dantzler's house, for which the Dantzlers collected $9,600 in insurance. At this juncture, the prosecutor contended that if evidence of that arson could properly be admitted, so could evidence of the rental property arson. The prosecutor disavowed any intent to tie Dantzler to the commission of the rental property arson; rather, he argued, that evidence was relevant to show that Dantzler lied on his insurance application, and that it was necessary to present a complete account of the alleged pattern of harassment.
 
 
 11
 The district court ruled that in the interest of fairness, he would allow both parties to raise each arson. The jury unanimously found Dantzler guilty on both counts. Dantzler now appeals.
 
 II.
 
 12
 Appellant claims that the introduction of evidence regarding the 1991 arson of the rental property was inadmissible under Federal Rule of Evidence 404(b). We need not reach this question, however, as it is plain from the record that the introduction of this evidence was harmless. See United States v. Morison, 844 F.2d 1057, 1078 (4th Cir.), cert. denied, 488 U.S. 908 (1988) (all non-constitutional evidentiary errors subject to harmless error analysis).
 
 
 13
 The evidence of appellant's guilt in this case is overwhelming. First, appellant was in a dire financial situation when the store was set on fire: he was very heavily in debt and the shop's revenues were dramatically declining. And shortly after the business began to fail--in fact, within weeks--appellant suddenly procured insurance and substantially over-insured the store. In addition, the kerosene containers found by the investigator were the same kind that Dantzler used in his store. The arsonist apparently entered the store without the use of force; appellant possessed the only keys to the store. Moreover, an eye-witness testified that he saw Dantzler fleeing from the rear of the store on the night of the arson. Finally, Dantzler stored over $1,200 of inventory at his home, thus saving it from the fire.
 
 
 14
 Standing on its own, this was persuasive evidence that Dantzler committed the arson. Thus, whether or not the district court abused its discretion by allowing the government to delve into the 1991 fire, we think it clear that the jury would have convicted appellant of arson in any event. See United States v. Grooms, 2 F.3d 85, 89 (4th Cir.1993), cert. denied, 114 S.Ct. 1550 (1994). In short, this was far from a close case, cf. United States v. Nyman, 649 F.2d 208, 212 (4th Cir.1980), and any error that occurred in connection with the evidence at issue was harmless.*
 
 III.
 
 15
 We find no merit in Dantzler's assignments of error. Accordingly, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 *
 Appellant's challenge to the jury instructions on the firearms offense is rejected on the authority of our decision in United States v. Langley, No. 93-5219 (4th Cir., Aug. 14, 1995) (en banc)